78,291-05

February 9TH, 2015

RECEIVED IN
COURT OF CRIMINAL APPEALS

FEB 12 2015

Abel Acosta, Clerk

VIA REGULAR MAIL
CLERK- Abel Acosta
Court of Criminal Appeals
P.O.Box 12308, Capital Station
Austin, Tx 78711

Re: Tr. Ct. No. 11-CR-2782-B-(4), WR-78,291-05 (Habeas Corpus)

Dear CLERK,

Enclosed is a courtesy copy of Petitioner's pro se response brief, in opposition to the findings of fact, conclusions of law, and recommendation from the 117TH Judicial District Court, Nueces County, pursuant to Local Rule CV-5 (a)(3)(c). Please file and present to this Honorable Court.

Sincerly,

Sammy Lopez Petitioner

Sammy Lopez
T.D.C.# 1755335
1300 FM 655, C.T. Terrell Unit
Rosharon, TX 77583

Enclosure: U.S. District Court
Civil Action No. 2:14-CV-240

117TH Judicial Court
Nueces, County TX

C.C. File Sammy Lopez

# IN THE TEXAS COURT OF CRIMINAL APPEALS
## AUSTIN, TX

SAMMY LOPEZ

      Petitioner

VS.

STATE OF TEXAS, et al,

      Respondents,

§
§ Cause No. 11-CR-2782-B(4)
§
§
§ Appeal Case No. 13-12-076-CR
§
§
§
§
§

## MOTION - TO - SUBMIT
### PETITIONER'S PRO-SE RESPONSE BRIEF IN OPPOSITION TO THE FINDINGS OF FACT, CONCLUSIONS OF LAW, AND RECOMMENDATION BY 117TH JUDICIAL DISTRICT, NUECES COUNTY

    Comes Now, the Petitioner, Sammy Lopez, pro se, and respectfully moves this Honorable Court in the above styled cause to his current filed Writ of habeas corpus petitions pursuant to article 11.07, and submits this "Response Brief" in opposition to the findings of fact, conclusions of law, and recommendation by the 117TH Judicial District Court, Nueces, County. The Petitioner for clarification, and in order to assist the Court in addressing the issues, grounds, and merits on his current petitions, and in support; therefore submits the following:

1/94

(1) This Court of Criminal Appeals, has not ruled on petitioner's habeas relief to current petitions and therefore, will have suffered no prejudice. (2.) This Motion to submit a "Response Brief," to the 117TH Judicial District Court findings of fact, conclusions of law, and recommendation of the above cause, is made in good faith, and will not cause undue delay. (3.) The factual contentions in this "Response Brief" have "Evidentiary" support of facts, and conclusions of "Clear Established "PRECEDENT" Federal Law.

## MEMORANDUM

Petitioner Sammy Lopez, is an inmate in the Texas Dept. of Criminal Justice, and currently is imprisoned at the C.T. Terrell Unit in Rosharon, TX. The actions about which he claims occurred in Nueces County, Texas.

Proceeding pro se, petitioner filed petitions pursuant to 28 U.S.C.§ 2254 on May, 29, 2014. The underlying conviction of 12yrs T.D.C.J. which is the subject of the petition is a 2011 Nueces County conviction for assault, family violence (repeat felony offender).

Petitioner asserts to be true, that his "GUARTEED" United States Constitutional rights were "Violated" by prosecution, and both trial and appellate counsel, pursuant to the 6TH and 14TH Amendments U.S. Const., during the trial and appellate proceedings.

2/94

Respondent filed a motion for summary judgment on July 24, 2014 to which Petitioner responded on August 18, 2014, and October 23, 2014 (D.E. 13, 16, 17). The U.S. District Judge having reviewed the findings of fact, and conclusions of law set forth in the Magistrate Judge's Memorandum and Recommendation (D.E. 19), and all other relevant documents in the record, and finding no clear error, the "Federal Court" ADOPTS as it's own the findings and conclusions of the Magistrate Judge. (Civil Action No. 2:14-CV-240)

Accordingly, the Respondent's motion for summary judgment (D.E.-13) is "DENIED WITHOUT PREJUDICE," and petitioner's application for Federal habeas corpus relief is, "STAYED AND ABATED," pending exhaustion of Petitioner's state court remedies. Petitioner is "ORDERED" to file his motion to reactivate his Federal petition within (30) days of receiving a decision on his state habeas case from the "Texas Court of Criminal Appeals."

In addition the U.S. District Federal Court has also said and concluded that without examining the merits of the claims, "it cannot" be said that they are plainly meritless.

If Petitioner's case is dismissed without prejudice at this point, he will be forever barred from having the merits of his claims reviewed by a Federal habeas Court. Accordingly, based on the circumstances of this case, it is recommended that Petitioners cause of action be "STAYED AND ABATED," pending exhaustion of his state court remedies.

3/94

# JURISDICTION

Fact is that the lower trial court does not have jurisdiction to resolve any disputes and enforce its decisions in there findings of fact, conclusions of law, and much less recommendation over cases that involve the Violation of the United States Constitution or a law passed by the U.S. Congress (called a Federal statue.") However, this Honorable Court of Criminal Appeals does have all Jurisdiction pursuant to article 11.07, Section 3(b) of the Texas Code of Criminal Procedure, and because this Court are generally free to deal with any matter (i.e., a state court can decide a dispute that is unresolved that has to do with state law or federal law.

# BACKGROUND

Petitioner's claims that his "Guaranteed" U.S. CONSTITUTIONAL rights were violated, by prosecution and attorneys, pursuant to the 6TH and 14TH Amendmends U.S. Const. during the trial and appellate proceedings is back up by "PRECEDENT" established case laws "U.S. CONSTITUTIONAL FEDERAL REQUIREMENTS," to all state courts, and is argued based on the "SUPREME COURTS PRECEDENT," case rulings in the past, with similar facts and claims of Petitioner's current case in which the "SUPREME COURT" Ruled differently then the trial and appellate courts did in petitioner's case.

4/94

Petitioner's claims and merits are generally founded or based on "FEDERAL U.S. CONSTITUTIONAL REQUIREMENTS" in the "BRADY" standard and requirement, and STRICKLAND standard and requirements... "CLEARLY ESTABLISHED PRECEDENT FEDERAL LAW"!

In addition, there is "Specific SUPREME COURT Precedents" "(Clearly Established FEDERAL LAWS)" that "REQUIRED" all state courts to reach a result that it did not reach. The more "SPECIFIC" the "SUPREME COURT PRECEDENT" is, the more recent it is, and the more "SIMILAR" it is to your case, "the more "CLOSELY" the state court "WILL HAVE TO FOLLOW the "PRECEDENT."

Petitioner has filed his applications for habeas relief in this Court of Criminal Appeals arguing and asserting to be true that his trial counsel was ineffective for the following reasons: (1) He "Failed" to conduct a thorough investigation; (2) He "Failed" to secure Petitioners and witnesses testimony; (3) He "Failed" to seek a continuance; (4) He "Failed to "Compel" the prosecutor to produce "EXCULPATORY" evidence; (5) He Coerced and Misadvised Petitioner not to testify on his own behalf; (6) He "Failed to object to evidence of crimes, wrongs, and other bad acts by Petitioner; and (7) He "Failed" to seek a jury instruction on the lesser included offense of assault.

5/94

See generally N.Y. Crim. Proc. Law § 30.30 (McKinney 2010).
A statutory right is a right created by an ordinary law.
By contrast a "CONSTITUTIONAL" right, is a right
"GUARANTEED" by the State or FEDERAL CONSTI-
TUTION. In addition, Courts are generally less
willing to decide that "CONSTITUTIONAL" rights -
which are often more "FUNDAMENTAL" and IMPORTANT-
have been waived).

"FEDERAL U.S. CONSTITUTIONAL" REQUIREMENTS"

According to the "RULE" laid down by the "U.S. SUPREME
COURT" in Brady v. Maryland, a prosecutor, "MAY NOT,"
refuse a request by the defendant for evidence that is
"EXCULPATORY," (tends to prove the defendant is not guilty,)
and MATERIAL to either guilt or punishment.

"Withholding such evidence, "EVEN BY MISTAKE,"
gives the Defendant the "RIGHT" to a "NEW TRIAL."

"BRADY" applies to evidence that supports the defendants claim
of innocence, but also to evidence that weakens the prose-
cutions case. One example is any material that undermines
the "CREDIBILITY" of a government witness. This
"Material" is called "Impeachment evidence". Prosecutor
can be "REQUIRED," to turn over a witness, pretrial statements
if they are inconsistent with the witness in-court testimony,

6/94

because the defense can use the pretrial statement to weaken the state witness' testimony." The prosecution has to turn over "Evidence", if it is "Favorable Material" to the defendant's guilt or punishment. (Citing Brady V. Maryland, 373 U.S. 83 (1963), (See also United States V. Bagley, 473 U.S.- 667, 676-677 (1985)

The "SUPREME COURT" has defined "MATERIAL" to mean that there is a "REASONABLE PROBABILITY," that the defendant would have been "ACQUITTED" if the evidence had been disclosed. In addition, a defendant's failure to request evidence, (EXCULPATORY)" that could have helped his case, "DOES NOT" leave government free of all "Obligations".

## "APPLICABLE ESTABLISED FEDERAL LAW"

See United States v. Agurs, 427 U.S. 97, 103-08, 96 S. Ct. 2392, 2397- 99, 49 L. Ed. 2d 342, 349-52 (1976) (finding that there are three (3) situations in which a "BRADY" claim might arise: (1.) where new evidence revealed that the prosecution introduced false trial testimony, that it knew or should have known was false; (2.) where the prosecution "Failed" to obey a defense request for "SPECIFIC- EXCULPATORY EVIDENCE," (evidence that helps to prove defendant's innocence); and (3.) where the prosecution "Failed" to volun- teer "Exculpatory" evidence that was never requested, or requested- 7/94

only in a general way; and "NOTING" the "EXISTENCE of a DUTY" on the part of the government in this last situation when "SUPPRESSION" of the Evidence would be "of Sufficient Significance" to result in the denial of the defendant's "RIGHT TO A FAIR TRAIL."

See also United States v. Bagley, 473 U.S. 667, 668 105 S.Ct 3375, 3381-82, 87 L.Ed. 2d 481, 491-92 (1985) (finding that "Regardless" of whether the request for the evidence was "Specific or general," "Favorable Evidence is Material," and the "Prosecution Violates," the "UNITED STATES CONSTITUTION" (Establised Federal Law) by "SUPPRESSING" such evidence "if there is a "REASONABLE PROBABILITY," that had the evidence been "disclosed to the defense," the result of the proceedings. would have different"); Kyles v. Whitley, 514 U.S. 419, 435, 115 S.Ct. 1555, 1567, 131 L.Ed. 2d 490, 507 (1995) (finding that once a court applying "Bagley" has found "CONSTITUTIONAL" Error, there is no need for further harmless-error review).

See Brady v. Maryland, 373 U.S. 83, 87 83 S.Ct. 1194, 1196-97 10 L. Ed. 2d 215, 218 (1963) (holding that the prosecution "Must" turn over Evidence to the defense if evidence is "Exculpatory," Impeaching, or Material).

The "BRADY" standard says that the "prosecution" "MUST" DISCLOSE EVIDENCE, that is "EXCULPATORY,"

8/94

(helps to prove the defendant's innocence) or "Impeaching," (shows of the prosecutions witnesses might not be believable).

"Exculpatory or Impeaching" evidence "Must" also be "Material," which means that there must be a "Reasonable Probability," that had the evidence been "Disclosed" to the defense, "the result of the Court proceedings would have been different.

## APPLICABLE ESTABLISED FEDERAL LAW

United States v. Bagley 473 U.S. 667, 682, 105 S. Ct. 3375, 3383, 87 L. Ed. 2d 481, 494 (1985)  See also Kyles V. Whitley, 514 U.S. 419, 421-22, 115 S. Ct. 1555, 1560, 131 L. Ed. 2d 490, 498 (1995) ("[B]ecause the net effect of the evidence withheld by the state in this case raises a "REASONABLE PROBABILITY" that it's disclosure would have "PRODUCED" a differt result, "Defendant is Entitled to a New Trial")., (holding that the "Suppresion" by the prosecution of evidence "Favorable" to an accused upon request "VIOLATES DUE PROCESS" ( a right - "GUARANTEED" by Established Federal Law, United States Constitution), where the evidence is "Material" either to guilt or punishment "irrespective of the good faith, or bad faith of the prosecution." "CONSTITUTIONAL" Violations are based on case laws "PRECEDENT" by -

9/94

the "SUPREME COURT," that withholding "EXCULPATORY" evidence by prosecution is a "CONSTITUTIONAL," Violation of U.S. FEDERAL LAW...

## Alleging Omitted ROSARIO Material

Petitioner asserts as true through the face of court's record that prosecution "Failed" to "Disclose" what is called "ROSARIO" material. "ROSARIO" material is any "recorded statement" of a prosecution witness (including police officers) possessed by the police or prosecution that relates to the subject matter of the witness's trial testimony.

"BY LAW" Established "PRECEDENT" case laws "Laid Down by the SUPREME COURT," "Clearly Established FEDERAL Law", the prosecutor "MUST" provide defense with recorded statements ("EXCULPATORY") that relate to the witness's testimony at defendant's trial. (Citing "BRADY RULE, and STANDARD, and REQUIREMENT, Brady V. Maryland, 373 U.S. 83 (1963) United States v. Bagley, 473 U.S. 667, 676-677- (1985).

But, Note; that the prosecution's "Failure" to disclose such "Material" does not mean that your conviction will be automatically over turned. Instead, a Court must find that there is a "REASONABLE POSSIBILITY", that the "Failure to Disclose" such statements "Materially" Contributed to a verdict against you.

10/94

"Only then will the "COURT REVERSE" your conviction on appeal." The Court will "REVERSE" your conviction "Only" "if you can prove that the omited of the "Rosario" materials was not harmless error (in other words, that the omission "PRE-JUDICED" your defense). Defendant must demonstrate there was a "REASONABLE PROBABILITY" that the "failure" to disclose these statements (recordings) contributed to the verdict against you.

## APPLICABLE LAW

N.Y. Crim. Proc. Law § 240.45(1)(a) (McKinney 2005 and Supp.-2009); See people V. Rosario, 9 N.Y. 2d 286, 290-291, 173 N.E. 2d 881, 883-84, 213 N.Y.S. 2d 448, 450-51 (1961) (Finding that trial court should have turned over to defense counsel, on their request statements given before trial by prosecution witnesses relating to their testimony, so that defense counsel could have used statement on cross-examination).

See N.Y. Crim. Proc. Law § 2.40.75 (McKinney 2005 and Supp. 2009). (Removing the previous "RULE" that "Failure" to turn over "Rosario" material was per se (Automatic) "Reversible Error," and replacing that "RULE" with the "REASONABLE POSSIBILITY" standard.

People V. Sorbello, 285 A.D. 2d 88, 95-96, 729 N.Y.S. 2d 2d 747, 753 (2d Dept. 2001) (holding that § 240.75, which re-placed the old per se reversible error "RULE" that applied

11/94

when a "ROSARIO" violation was found with a standard of harmless error, applies retroactively to all cases that are being prosecuted or appleaded as of its February 1, 2001 effective date).

People V. Potter, 283 A.D. 2d. 1011, 1011-1012, 725 N.Y.S. 2d 778, 779 (4TH Dept. 2001) ("GRANTING NEW TRIAL," because of the "REASONABLE POSSIBILITY," that "FAILURE to Disclose" recorded tapes and statements (Affidavits), relating to the witness trial testimony, MATERIALLY" Contributed to the verdict.

See People V. Jackson, 78 N.Y. 2d 638, 641, 585 N.E. 2d 799, 797, 578 N.Y.S. 2d 483, 485 (1991) (stating that motion for post-conviction relief brought after a completed direct appeal will only be successful, "if defendant can prove both improper conduct by prosecutor and "Prejudice" to the defense.)

See People V. Nikolla, 155 Misc. 2d 642, 649 589 N.Y.S. 2d 1013, 1018, (Supp. Ct. Queens County 1992) ("Granting New Trial," because prosecution's withholding of (evidence) "ROSARIO material "PREJUDICED" defendant's case, and there was a "REASONABLE POSSIBILITY," that the "Violation" "Contributed to the Verdict," "CLEARLY EXISTED").

People V. Vilardi, 76 N.Y. 2d 67, 77-78, 555 N.E. 2d 915, 920-21, 556 N.Y.S. 2d 518, 523-24 (1990) (explaining that the

12/94

standard for determining whether an omission of "Rosario" material was "Prejudiced" is whether there was a "Reasonable-Possibility", that "PREJUDICE" RESULTED).

See People v. Blagrove, 183 A.D. 2d 837, 837, 584 N.Y.S. 2d 86, 87 (2d Dept. 1992) (Stating that prosecutions "Delay" in turning over "Material" relating to a prosecution witness" testimony "will ONLY RESULT in a REVERSAL", if the defense "WAS" substantially "PREJUDICED" by the "Delay".

Petitioner further alleges, and asserts as true that his Appellate counsel was ineffective for the following reasons: (1) He "Failed" to diligently pursue his motion for new trial; (2.) He "Failed" to include Meritorious issues in his Appellant Brief; (3.) He "Failed to diligently prosecute a writ of habeas corpus; (4.) He "Failed to argue ineffective assistance of counsel at motion for new trial. (5.) He "Failed" to request a continuance to review the tape recordings (EXCULPATORY) of jail conversations before the hearing on Motion for New Trial, (6.) He "Failed to put "Exculpatory", evidence to good use for the defense; (7.) He "Failed" to make clear the legal basis on which the "EXCULPATORY" evidence would be admissible to impeach a specific witness, (8.) He "Failed" to show how undisclosed "exculpatory" evidence was "Material" at the guilt/innocence, and punishment stages of the trial, and (9.) He "Failed" to submit a

13/94

brief drafted by Petitioner to the appellate court.

"The Federal Standard" (for ineffective assistance of counsel).

The Federal Standard for ineffective assistance of counsel under the "UNITED STATES CONSTITUTION" is the same no matter where you are.

There are three ways in which you can make an ineffective counsel claim under "FEDERAL LAW": you can claim — (1.) that your lawyer was actually ineffective, (2.) — Constructively ineffective, or (3.) that he had a conflict of interest that caused him to be actually ineffective. ( Please read both petitions, habeas corpus, claims and merits describing and showing ineffectiveness of trial and appellate counsel's ineffectiveness in the proceedings. (Also see "Memorandum of Law" in support of current writ of habeas corpus).

Petitioner asserts as true through the face of court record in it's totality, and all other relevant documents in the record, that trial and appellate counsel's ineffectiveness is a "FEDERAL CONSTITUTIONAL" claim, even though he is claiming a "FEDERAL CONSTITUTIONAL" violation of state effective counsel "Guaranteed," pursuant to the 6TH, and 14TH Amendments United States Constitution.

14/94

Further, "there is a necessity for an Evidentiary hearing", or "further expansion of the record and the assertions contained in Petitioner's (prose) Response Brief of facts, are true, and correct.

(1.) Counsel did not investigated the possibility and did not make sound strategic choices at trial, or before trial. But instead failed to call Petitioner's parole officer as a witness. In the instant cause trial counsel was made aware of viable defense witness "George Abella", petitioner's parole officer, that witness was willing, and available to testify at trial, that the substance of his testimony would directly "contradict and impeach" the alleged victim's trial testimony, and that Petitioner specifically wanted the witness to testify. Further, that the testimony was favorable to the petitioner (defense), and the "failure" to call, contact, secure the testimony of the witness was not sound trial stragedy, given that defense counsel presented "NO WITNESS", and failed to aggressively cross-examine the alleged the alleged victim. The petitioner asserts that trial counsel had a "Duty" to bring to bear such legal skills at the trial as to make it a meaningful adversarial test pursuant to the 6TH Amendment U.S. Constitution. However, counsel's "failure" to call a viable witness on behalf of the defense demonstrate's that counsel's performance failed to constitute reasonable effective assistance of counsel, and that his representation fell below an objective standard of reasonableness under prevailing professional-

15/94

norms. See Ex Parte, Menchaca, Supra. Id. 128, 131. Applying the Strickland, SUPRA analysis to the petitioner's claim that counsel was ineffective for failing to investigate, contact, and secure the testimony of parole officer, who would have impeached the alleged victim's at the trial. (see Memorandum of Law In Support of Habeas Corpus Petition Art. 11.07) (Pages 3-6)

Counsel's failure to call witness to support defense is ineffective assistance of counsel, Ex Parte McCray, - (Crim. App. 2006) WL 2846892; (Failure to investigate, and present evidence on petitioner's behalf, Ex Parte - Ybarra, 629 S.W. 2d 943 (Tex. Crim. App. 1983), Strickland, Supra

Rickman v. Bell, 131 F. 3d 1150, 1156-60 (6TH Cir. 1997) (affirming judgment of ineffective assistance where counsel had abandoned defendant's interest.

United States v. Cronic, 466, U.S. 648, 658, 104 S. Ct. 2039, 2046, 80 L. Ed 2d 657, (1984) (recognizing a "Right" where performance of counsel "Deprived" defendant of a fair trial).

Further, the testimony of parole officer as a witness would have conferred much benefit to the defense, and the evidence would not have been cumulative, because this evidence "was not" produced at trial.

(2.) the Court of Appeals failed to consider and acknowledge that Prosecutor committed a violation against Clearly Established FEDERAL LAW, by suppressing (exculpatory evidence) to the defense that was favorable and material to the defense. The appeals court did not bother to hear the facts on recordings but ignored to review them. The exculpatory recordings "were not" cumulative of evidence because the jury never had an opportunity to hear the facts of evidence suppressed by prosecutor.

Petitioner "NEVER AGREED" with counsel not to discuss those recordings but on the Contrary, trial counsel failed to review exculpatory evidence (recordings) even after the trial Court had granted his request to have prosecution produce them.

Court's assertion that petitioner agreed with counsel not to discuss those recordings is incorrect, untrue, and not credible. In fact there is no indication on the face of the courts record to back-up these allegations. However, the "Facts" are that before trial, defense counsel was informed by Petitioner that there was numerous telephone conversations between him and the alleged victim. At a pretrial conference, defense trial counsel specifically requested the telephone recordings (records) from Nueces County Jail. (R.V5 p.21)

The Court granted the Order/Request, and Ordered the state to produce the records by November 22, 2011—

17/94

(R.V5,p.22). The telephone records were not produced on that date. (R,V5p.31) (See appellants Initial Brief on appeal-No. 13-12-076-CR, Pages 9,10,13.) See also (Memorandum of Law In Support of Habeas Corpus Art.11.07); (Ground Two); People V. Droz, 39 N.Y. 2d 457, 462, 348 N.E. 2d 880, 882-83, 384 N.Y. S.2d 404, 407 (1976) (finding improper representation where a lawyer failed to adequately prepared for trial, did not communicate with his client in a timely manner, made no attempt to contact potential witnesses, and neglected to study the record);

Therefore, Petitioner has shown that those "exculpatory" recordings were "Favorable and Material to his case, and that he was "Prejudiced when they were not presented or played to the jury, when it would have changed the outcome of his case. (see entire Habeas Corpus petitions)

(3.) Petitioner does admit that he did go on record at trial agreeing not to testify. But this was after counsel coerce and misadvised Petitioner to not testify. Petitioner contends that counsel provided ineffective assistance of counsel by coercing, and misadvising him into not testifying on his own behalf, by telling him that if he chose to testify at the trial, the jury would hear about his prior felony conviction, and would find him guilty because he had a prior conviction. That had-

18/94

counsel not coerced and misadvised him, he would have testified at the trial and, given his version and side of the true story as to what actually transpired on February 24, 2011, That his version would have been more credible, believable, and consistent with the circumstantial evidence, (if any,) presented at the trial. Where State's own witness was already proven to have made prior inconsistent statements as to whether she had been assaulted, or not by petitioner. Among other important facts, defendant would have testified that the alleged victim, had informed the prosecutor, prior to trial that the complainant against the defendant was false. Therefore, the prosecutor had knowledge of something that was not true prior to trial. Therefore, if the prosecutor had knowledge to something not true prior to trial and used Testimony knowing already that it is false, then the prosecutor is "Procuring", and introducing false testimony at trial - (See - Monney V. Holchan, Code of Criminal Procedure. Third Edition 24.3 (b), 24.3 (C) page 344.

Because allege victim's testimony against the defendant is based on "PERJURY" it clarifies that the defendant is innocent; although any perjury under oath is Aggravated perjury - See Texas Penal Code. (NOTE: any False Testimony that contributed to the defendant's -

19/94

conviction is also within *Monney U. Holchan,* *See Code of Crim. Proc. 3rd Edition 24.3(b), 24.3(c) - page 344.* Had petitioner testified the jury could have "weighed the testimony and a "Reasonable Probability" exist that Petitioner's version would have been much more believable than that of the alleged victim. Trial attorney had complete knowledge of petitioner's testimony, however, he never the less, coerced and misadvised petitioner into not testifying.

Petitioner asserts that pursuant to the 6TH and 14TH Amends. U.S. Constitution, He had a right to testify, and present evidence, and a right to present a defense, "the right to present his version of facts." (See *Washington U. Texas,* 388 U.S. 14, 19, 87 S. Ct. 1920, 1923(1967) "The right to offer the testimony of witnesses, and compell their attendance, if necessary is in plain terms "the right to present a defense", "the right to present the defendant's version of the facts as well as the prosecutions to the jury, so it may decide where the "Truth" lies. Just as an accused has the "right to confront the prosecutions witnesses for the purpose of challenging their testimony, Petitioner has a "right to present his own witnesses to establish defense." This right is a "Fundamental element of Due Process of Law".

20/94

Therefore, the Petitioner's testimony, (as a witness) on his own (behalf) was a "Fundamental" right that counsel prevented the petitioner from exercising.

Counsel's representation fell below an objective Standard of Reasonabless under prevailing professional norms. Counsel's actions and inactions and, errors were of such a nature and unjustifiabily deficient that they "Prejudice the petitioner, where Petitioner was coerced and misadvised into not testifying and presenting his version of the story and events which would have rebutted the alleged victim's testimony and given the jury evidence to consider on behalf of the Petitioner's. There exist a "Reasonable Probability" that "the outcome of the trial proceedings would have been different. "[A] reasonable probability is a probability sufficient to "undermine confidence" in the outcome." Id.(See Strickland at 687, Ex parte Menchaca, Id. 128, 131

Accordingly, petitioner is entitled to any/and all relief requested in his habeas petition for writ of habeas corpus on these claims of ineffective assistance of counsel.

Further, counsels coersion and misadvise to Petitioner —

21/94

not to testify was not sound but "unconstitutional according to petitioner's constitutional rights.

Further, petitioner history of family violence was not on trial, but the proving that he actually commited the alleged assault. Certainly the prosecution would have attempted to use Petitioners past criminal history to inflame the minds of the jury into thinking that Petitioner had the propensity to commit the alleged assault. (NOTE:) Extraneous acts are "generally inadmissible" at the guilt/innocense stage of a trial. (See Tex. Rule Evid. 404(b) "Stating that evidence of other crimes, wrongs, or bad acts "is not" admissible to prove the character of a person in conformity therewith. (See Thompson-vs-State, 9 S.W. 3d 808,814-15 (Tex. Crim.App. (1999) "[A] defendant is entitled to be tried on the accusations made in State's pleading, and "should not" be tried for some collateral crime, or for being a criminal generally;) (Wilkerson V. State, 736 S.W. 2d 656, 659. Counsel should have objected where the evidence or alleged self-serving statements was "unfairly prejudicial" and it had an undue tendency to suggest an improper basis for reaching a decision.) (See Rule of Evid. 403; Render-V-State, 22/94

347 S.W. 3d 905 (Tex.App. Eastland 2011)(holding, ["E]vidence is unfairly prejudicial when it has undue tendency to suggest an improper basis for reaching a decision." The 6TH Amendment however provides that the defendant has a right to present a defense, which includes the right to present a defense, which includes the "right" to present witnesses and to testify himself.

(4.) The convictions and sentence under which Petitioner is imprisoned are "unlawful and void" because of multiple violations of Petitioner's right to due process of law guaranteed by the Fourteenth Amendment to the Constitution of the United States," violation of equal protection of the law guaranteed by the Fourteenth Amendment, and the violation of the right to the effective assistance of counsel protected by the Sixth Amendment. These violations are not mere irregularities, but are "Major Constitutional Violations" which cast significant doubt on the "fairness of Petitioner's trial and, more importantly call into question the reliability of the verdict.

Among other multiple violations, Petitioner was denied due process and the right to present a defense to criminal charges when the trial counsel rendered ineffective assistance of counsel during trial proceedings. (See Habeas Corpus petitions in general).

23/94

Further, the prosecutor violated discovery orders (Federal law) by withholding favorable material (exculpatory evidence) of the primary prosecution witness. (See habeas-Corpus petitions in general). Petitioner submits that the suppression of exculpatory evidence by prosecutor Prejudiced, deprived, and harmed him of a fair trial.

In contrast, the interest of the Petitioner is the right to prove his innocence of alleged assaults. The courts consistently hold that to be the most fundamental of rights under the Constitution, and the one that most directly involves the integrity of the fact-finding process. Chambers v. Mississippi, Supra; Pettijohn-v-Hall, Supra; Hill-v-Rose, supra.

Violations of rights which go to the central issue of guilt or innocense have a preferred position and are deemed the most deserving of habeas corpus relief. The exclusion of Petitioner's testimony violated the "Federal Constitionall" guaranteed of due process. U.S. Const. Amend, XIV. The exclusion made it impossible for the fact-finder (jury) to reach a fair conclusion as to Petitioner's guilt or innocence. It therefore, directly "Prejudiced" the Petitioner. The state should order to release Petitioner unless a new trial is held at which the excluded evidence (exculpatory)-

24/94

can be weighed by the jury before a verdict is reached.

Petitioner was Denied Due Process and Equal Protection Of The Laws By The State Court's Refusal To Reverse The Convictions For The Prosecutor's Violation of a Discovery Order Involving Concealment Of Statements, (recordings and affidavits), of The Main Prosecution Witness.

Petitioner never agreed with trial counsel that their defensive stragedy would be to waive objection and present evidence for impeachment purposes, through the victim's testimony, but rather present evidence for impeachment purposes through the "exculpatory evidence" (recordings) and affidavits recanting her allegations, and that see had lied to the police by fabricating police reports of alleged assault by the Petitioner. Strategy was to allow Petitioner to take the stand at trial so that the jury could have the opportunity to hear his side of the story, and for Petitioner to have a chance, (which is a fundamental right) to cross examine alleged victim so that he could challenge the accusations and allegations towards Petitioner. Further, strategy was to also have George Abella (parole officer) testify on behalf of Petitioner.

25/94

And for trial counsel to object to any and all alleged other crimes, wrongs, or bad acts against Petitioner that had never been proven prior to trial, and no timely "Notice" was given that such alleged statement would be used. Further, trial counsel was to request that the lesser included offenses of assault be instructed to the jury.

Petitioner was entitled to the lesser included offense instruction. Petitioner's contention that he was not provided effective assistance of counsel because trial counsel "failed" to request that the lesser included offense(s) of assault be intructed to the jury is founded on the Texas Code Criminal Procedure, Article 37.09-(1), and the facts of the case. Art. 37.09 (1) sets forth a two prong test where a lesser included offense is required and permitted. First, "the charged offense [must] include [the proof required] to established the lesser included offense". Ferrel-vs-State, 55 s.w 3d 586, 589 (Tex. Crim. App. 2001), Second there must be "some evidence in the record that would permit a jury to find that, f the defendant is guilty, he is guilty only of the lesser offense." Ferrel Id at 589. Further, if some evidence "affirmatively rebutts or negates" a required element of the charged offense, the lesser in-

26/94

-cluded charge may be raised. *Schweinle-V-State,* 915. S.W. 2d 17,19 (Tex. Crim. App. 1996) See also *Almanza-V-State,* 686 S.W. 2d 157, 171, (Tex. Crim.— App. 1985) the same harm analysis, which means "any" harm thus, if charging error causes actual harm to appellant (petitioner) as apposed to "theoretical" harm then the errors requires a "reversal of the judgment of the trial court." Also see *Arline-V-State,* 721 S.W. 2d 348, 351 (Tex. Crim. App. 1986) If the evidence raises the issue, the trial court must include an instruction [to, and] in the jury charge. *Rousseau-V-State,* 855 S.W. 2d 666, 672 (Tex. Crim. App. 1993) and the instruction must be given no matter what the trial court thinks, *Granger-V-State,* 3 S.W 3d 36,38 (Tex. Crim.— App. 1999) *Applying the law in relation to the "FACTS" of the case," counsel "should have" requested the lesser included offenses. (See complete habeas corpus petitions for complete details, claims and merits of ineffective assistance of counsel.) (NOTE:) Prosecutor Failed to prove, or show any bodily injury what so ever!

Further, all of the Petitioner's claims and merits against his appellate attorney revolve around "Facts" that he "Failed" in various respects to raise issues

27/94

regarding "exculpatory evidence" of telephone recordings of conversations between him and alleged victim that were "suppressed by prosecutor before and during trial."

The Thirteenth Court of Appeals determined Petitioner's case and claims based on incorrect law, or law that was "unreasonably applied." Further, the 13TH Court of Appeals got the facts of his case wrong. The 13TH Court of Appeals neither determined the "right standard" for Petitioner's case, and (1.) did not believe none of the evidence that was presented; (2) interpreted all of the evidence (exculpatory) incorrectly and based a ruling on this "misinterpreted evidence"; or (3) - "Ignored legally relevant facts," that it needed to consider and acknowledge in order to reach the correct result. Courts determination that "exculpatory" was cumulative of other evidence produced at trial is incorrect, because there was no other evidence presented at trial. The exculpatory recordings exonerating Petitioner were never heard by the 13TH Court of Appeals for them to conclude that recordings would have been cumulative. This statement by the 13TH Court of Appeals is just not credible.

Petitioner has through due diligence satisfy-

28/94

both Brady claim, requirement materiality and Strickland's prejudice requirement. And so those recordings were favorable material to the defense, it would have changed the outcome of petitioner case. The Petitioner has without a doubt through the face of Courts record, showed Prejudice stemming from the absence of arguments regarding these recordings (exculpatory evidence) suppressed by prosecutor, which is a violation of Clerly established Federal law. By counsels rendering ineffective-assistance of counsel in various respects in the representation of petitioner at trial, Petitioner has more than shown but rather proven that counsel acted deficiently and therefore Prejudiced petitioner by failing to make the important arguments urged by the present petitions pursuant to Art. 11.07. Habeas Corpus

Petioner has met his burden to prove both trial and appellate counsel Deficiencies or that the result of these proceedings would have been different but for counsels unprofessional, errors, actions/inactions, deficiencies. prejudice the outcome of trial, and both attorneys rendered ineffective assistance as analyzed under Strickland standard and requirements.

29/94

# APPICABLE FEDERAL LAW

_Massaro V. United States, 538 U.S. 500, 504, 123 S. Ct. 1690, 1694 155 L. Ed. 2d 714, 720 (2003)_ (holding an "ineffective assistance of counsel claim may be brought in a collateral proceedings.... whether or not the Petitioner could have raised the claim on direct appeal"). See also _United States V. Martinez, 136 F. 3d 972, 979 (4TH Cir. 1998)_ ("[A] defendant can raise the claim of ineffective assistance of counsel... by a collateral challenge pursuant to [FEDERAL habeas corpus"].

See e.g., _Guinan V. United States, 6 F. 3d 468, 471 (7TH Cir. 1993)_ (Holding that an ineffectiveness claim may be brought in a collateral proceedings when evidence of ineffectiveness lies outside the record, an "Evidentiary" hearing would be necessary or useful in determining whether counsel was ineffective.)

## Actual Ineffectiveness: The Strickland Test

In general, to show ineffective assistance of counsel under the United States Constitution, you must pass the two-part Strickland test. The first part of this test, the "Deficient Performance Prong," requires you to prove your lawyers performance was "DEFICIENT." The Court decides whether your lawyer's representation "fell below an objective standard of REASONABLENESS." This means the Court asks if your lawyer acted

in a way that a reasonable person or most other lawyers would think is acceptable. Since this standard can apply different-ly in different situations, you must identify the "Specific" things your lawyer did that were so bad (deprived and Prejudiced the outcome of trial,) that you were effectively deprived of your right to counsel. You cannot just say that you had a bad lawyer or that he didn't do enough to help you.

You must "Point" to the "Specific" things your lawyer "did badly or did not do at all," and show that these "Failures" made your representation fall below, the professional standards for lawyers prescribed and required by the Strickland standard. If the Court finds your lawyer's representation "fell below this objective standard of "REASONABLENESS", it will apply the second part of the Strickland test.

The second part, the "PREJUICE PRONG," requires you to prove there is a "REASONABLE PROBABILITY," that but, for counsel's unprofessional errors, the result of the proceedings would have been different." This means you not only have to point out what your lawyer did wrong, but you also have to show that your lawyer's actions/inactions harm you and possibly changed the outcome of your case.

(Note:) The "SUPREME" COURT," has "Specifically" said the "Pre-judic Prong," requires you to show "ONLY A REASONABLE PRO-BABILITY" of a different result, and you do not have

31/94

to prove your lawyer's errors, "more likely than not, altered the outcome."

## "APPLICABLE ESTABLISHED FEDERAL LAW"

Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674, 693 (1984) (establishing "FEDERAL" standard for ineffective assistance of counsel).

These "basic professional standards" could include, but are not limited to, a "Duty" of Loyalty, a "Duty to Advocate the Defendant's Cause, a "Duty" to Avoid Conflicts of Interests, the "Duty" to Consult with Defendant on Important Decisions, and a "Duty" to keep Defendant Informed of Important Developments during the prosecution, and a "Duty" to use the Level of Skill, and Knowledge that make the trial "TRULY ADVERSARIAL."

(Note:) Petitioner asserts that both trial and appellate attorneys "fell below these objective standards of "Reasonableness" described above, and also prescribed and required by established "Federal" standard at his trial and appellate proceedings.

Strickland v. Washington, 466 U.S. 668, 688-89, 104 S. Ct. 2052 2065 80 L.Ed 2d 674, 694-698 (1984) ("Outlining these duties

32/94

but noting that they "Neither exhaustively define the Obligations of counsel, nor form a checklist for judicial evaluation of attorney performance,").

Williams V. Taylor, 529 U.S. 362, 390-91, 120 S. Ct. 1495, 1511-12 146 L. Ed. 2d 389, 416 (2000) (holding that analysis of the "Prejudice Prong", should focus solely on whether there was "Reasonable Probability," that, but for counsel's errors, the result of the proceedings would have been different.)

See, e.g., Mackey V. Russell, No. 02-4237, 148 Fed. App'x 355, 369 (6TH Cir. August 9, 2005) (unpublished) (holding state court "Unreasonably" applied Strickland when it failed to consider the "Cumulative" effect of counsel's errors.)

## PRELIMINARY Statement

For the purpose of this pro se response brief in opposition to the findings of fact, conclusions of law, and recommendation of the (lower court) 117TH Judicial District, Nueces County.

Petitioner adopts and incorporates the statements of fact, summary of the arguments, arguments and authorities as set forth in his Appellant's Initial Brief pp. 7-17.

The State's "Failure" to timely disclose (Exculpatory) evidence, jail recorded statements to the defense "Merits Reversal." The State's "Failure" is a "BRADY" claim, (a Violation of the United States Constitution Amendments, and "Clearly Establised (PRECEDENT)

33/94

Federal Law...") because the prosecutor "failed" to "Disclose" proper impeachment "Exculpatory" evidence in a timely manner, that were "Favorable Material" to the defense.

For this reason, Petitioner was "PREJUDICED, HARMED, and DEPRIVED" of his "GUARANTEED" rights pursuant to the 6TH and 14TH Amendments United States Constitution" to have a "Fair Trial."

Further, in addition, had trial attorney diligently Compel prosecutor to disclose "EXCULPATORY" evidence in a timely manner, even after, the 117TH Judicial District Trial Court had "Previously" before trial, had "Ordered" prosecutor to do so by November 22, 2011 at 1:00pm. There exist a "Reasonable Probability" that the outcome of the trial proceedings would have been different. (Citing Clearly "PRECEDENT" FEDERAL LAW U.S. CONSTITUTION, "Brady V. Maryland 373 U.S. 83 (1963) "Strickland V. Washington, 466 U.S. 668, 687,696 (1984), United V. Bagley, 473 U.S. 667, 676-677 (1985).

Also, had trial attorney aggressively, diligently, and used the Level of Skill, and Knowledge that make the trial proceeding "TRULY ADVERSARIAL," in Cross-examining the discredible alleged victim about her statements on the "exculpatory," phone jail recordings, there would have been substantially a lot more impeachment of her "PERJURED" testimony, "than what actually occurred," resulting in a "Reasonable -

34/94

Probability," "that the outcome of the trial would have been different."

## STATEMENTS OF FACT

In this case, the facts are that the Prosecutor violated "Clearly Established "PRECEDENT" FEDERAL LAW," when he "failed" to "Disclose" "Exculpatory" evidence that was "Crucial and Favorable Material, to the defense. The State (prosecutor) was "ORDERED" before trial, by the 117TH Judicial District Court to produce and disclose favorable material ("Exculpatory") evidence, jail recordings to the defense by November 22, 2011, at 1:00pm. And it is "Undisputed in the face of "COURT RECORDS" that he "Failed" to "COMPLY" with a "DIRECT COURT ORDER"... (See RR vol 5, — pp. 21-22, RR. vol.5, pp. 25-26).

## APPLICABLE LAW

See People V. Ayala 75 N.Y. 2d 422, 431, 553 N.E. 2d 960, 964, 554 N.Y.S. 2d 412, 416. (1990)("[T]he standard for non-constitutional error, which is governed solely by state law, "Requires REVERSAL" if the properly admitted evidence was not "Overwhelming" and there is a "Significant Probability" that the jury would have "ACQUITTED" the defendant had it not been for the error or errors which occurred. (Citation omitted).

35/94

See *Chapman v. California* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed. 2d 705, 710-11 (1967) (noting that on appeal that prosecution must "Prove beyond a Reasonable Doubt, that the error complained of, did not contribute to the verdict obtained," for a conviction to be sustained despite a Constitutional error); See also *People v. Ayala* 75 N.Y. 2d 422, 431, 553 N.E. 2d 960, 964, 554 N.Y.S. 2d 412, 416 (1990) "Constitutional Error... MUST LEAD TO REVERSAL" unless there is no "Reasonable Possibility," that the error might have contributed of the conviction.") (Note:) The harmless error test for Constitutional Errors in habeas corpus proceedings is different than the standard in direct appeals.

*People v. Brown* 45 N.Y. 2d 852, 853-54, 382 N.E. 2d 1149, 1149-50 410 N.Y.S. 2d 287, 287 (1978) ("Generally, the ineffectiveness of counsel is not demonstrable on the "MAIN RECORD," but in this case, it is...") *United States v. Cronic*, 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed. 2d 657, 667 (1984) (recognizing a "Right" where performance of counsel "DEPRIVED" defendant of a "Fair Trial".)

According to testimony given at the defendant's hearing for motion for new trial, there was additional discussions between the defense trial attorney, the court, and the prosecutor regarding the telephone recordings. The "Exculpatory" recordings were supposed to be turned over the following day November 23, 2011. (R, V5, p. 21)

36/94

Prosecutor testified that he "did not" make personal contact with defense trial attorney regarding the (exculpatory evidence) recordings. He maintaines that he left a recorded telephone voice message for defense attorney to pick-up exculpatory recordings. This is in "COMPLETE CONTRA-DICTION," to the defense attorney's testimony, that he "DID NOT" received the "EXCULPATORY," recordings, until a day or two after the defendant had been sen-tenced. (See Appellant's Brief on Appeal pp. 9, 12, 13, 14 –) (No. 13-12-076-CR)

The prosecutor testified that he had listen to about one half of the (exculpatory') jail recordings before trial. So he had "knowledge" of "Favorable Material," to the defense, contained in the recordings, and did his "Best to Suppress", and "Did Not" disclose this information which was "Im-portant, Favorable Material," evidence to the defense.
(See Appellant's Brief on Appeal pp. 14-15) Appeal No. 13-12-076-CR

The Petitioner has "Proven" his "BRADY" claim that the Prosecutor withheld and ("Suppressed EXCULPATORY Evi-dence"), "Favorable Material" to the defense. Trial attor-ney admitted that he had a discussion with the prose-cutor, at docket call about the jail phone calls, (excul-patory evidence) and that the prosecutor had agreed to provide them the next day. (RR vol. 5 pp. 31-33) (Note:) –
(Docket call was on 11-22-11 at 1:00pm)
37/94

Defense trial attorney claimed when he testified at the hearing for motion for new trial, that he did not recall having any contact with the prosecutor there after regarding the availability of the jail recordings (exculpatory) (RR vol 5, p. 33)

Defense trial attorney admitted that he did not know when the recordings were available to be pick-up, but that he did not pick them up from the district attorney's office until after the trial. (RR. vol. 5 pp. 22-24)

Leo Gonzalez, the prosecutor testified that the trial Court had "ORDERED" him to produce the jail recordings, ("EXCULPATORY") evidence on November 22, 2011 (RR vol.5 pp. 37-38) Prosecutor testified that, after he learned that the deadline for production and disclosing of the ("Exculpatory") evidence had been extended by one day, he obtained the recordings and, left them up front for defense attorney on November 23, 2011. (RR vol. 5 p. 39) Prosecutor testified that he left a telephone message for trial attorney that the recordings were available for pick up and, that by the time prosecutor left work that day, the recordings had been picked up (RR. vol 5 p. 40). Again, this is in "COMPLETE CONTRADICTION" to the defense attorney's "TESTIMONY" on the face of the Courts record, that he did not receive the recordings until a day or two after trial was over-

38/94

and defendant had been sentenced. (See p. 13, of Appellants-Brief on Appeal No. 13-12-076-CR).

(NOTE:) It is apparent, so obvious, and "Undisputed" that someone is "Lying" in this case and not telling the truth!! It is inconceivable that trial attorney and prosecutor would have conflicting testimonies in a Court of trial. Petitioner asserts, and respectfully suggests that in order to find out the "TRUTH" in this conflicting subject matter, is to review or examin the "Docket Sheet" computer printout in this cause to determine if there is any record date that prosecutor submitted the record to be pick-up by trial attorney, or perhaps confirm trial attorney's, checking out of the recordings dates.
   Certainly, there must be a way to "CONFIRM" who's "lying and telling the Truth".

## SUMMARY OF THE ARGUMENT

State claims, by their own "Admission", that Petitioner's "BRADY" claim must fail, "BECAUSE", both trial and appellate counsel had "KNOWLEDGE" before trial, and "motion for new trial," of the "EXISTENSE" of the "Exculpatory" recordings in question, and, "Because" they both "Failed" to "Request A-Continuance," in order to obtain them, and examin the "Exculpatory" evidence by reviewing them, and "Because" —

39/94

the prosecutor ("allegedly") sufficiently made the (exculpatory) recordings available to trial counsel before trial, and to appellate counsel before "motion for new trial," and "Because" both trial and appellate attorney's "failed" to "Specify" the "RELEVANT PORTIONS" of the (exculpatory) recordings in trial, and at motion for new trial, and "BECAUSE" they both "failed" to "PLAY" the "EXCULPATORY EVIDENCE" recordings or "ANY RELEVANT PORTION" for the trial court to "HEAR," and "Because" he "Failed To Show" that the recordings would have been Material to their defense. (See Brief for the State on Appeal p. 4, (NO. 13-12-076-CR).

Petitioner asserts as true, and couldn't agree more with "State's own Admission" claim in their Summary of the Argument, (First issue, on page 4, "Brief for the State on Appeal.

It is "Undisputed" by the showing of the face of the Courts record, that both trial and appellate counsel rendered ineffective assistance, and also by the "States OWN ADMITTANCE", and assertion to be true, through the examining of the face of Court's record.

It is true by the face of the Court's record that appellate counsel was made available to him after the petitioner's trial, the "EXCULPATORY" evidence jail recordings

40/94

for his representation on petitioner's hearing for motion on new trial, and Appeal purposes as well; but "Rendered" ineffective assistance of appellate counsel by "Failing" to "PLAY" the least "Required" of the "Relevant" "Portions" of the "Favorable Material" "Exculpatory Evidence" for the defense, and for the trial Court to hear, and "Because counsel "Failed" to show that the "Exculpatory" recordings would have been "Favorable Material" to the defense as "Admitted and asserted to be true" by "the State's Own Admission" (See Brief for the State on Appeal from the 117TH District Court, p. 4.)

Petitioner (Lopez) has shown and proven through the face of the record and, also by the "State's Own Admission" and assertion to be true, after obviously examining the record themselves that, Petitioner's trial and appellate counsel's actions and inactions, and their "Representation, Violated" the Petitioner's "Guaranteed U.S. Const. Rights pursuant to the 6TH and 14TH Amendment to effective assistance of counsel "Required by clear established Federal Law... (Strickland standard and, "Requirements)

Again Petitioner in his case has proven and shown "without a reasonable doubt" through the face of Courts record, the "Preponderance of the Evidence" that: (1.) trial and appellate counsel's unprofessional performance was "Deficient," -

41/94

and (2.) the "Deficiency" "Prejudiced" the defense. (Citing Strickland V. Washington, 466. U.S. 668, 687 (1984); Perez V. State, 310 S.W 3d 890, 895 (Tex. Crim. App. 2010.), Cueva V. State, 339 S.W. 3d 839, 857 (Tex. App Corpus Christi; 2011 pet. ref'd)

It is also true that by the same Evidence on the face of the record; (on page 4 Brief for the State on Appeal, No. 13-12-076-CR) that Petitioner has proven and shown through Court's record, and also by the "State's Own Admission" and assertion to be true after obviously examining the Facts on the record themselves, that Petitioner's counsel's rendered ineffective assistance, and that counsel's representation "Violated the Petitioner's "Guaranteed" U.S. Constitution Right" pursuant to the 6TH and 14TH Amendments, (clearly established Federal Law), to effective assistance of trial counsel. (Citing Strickland standards required by Federal law).

It is clear to see and it is undisputed that trial attorney "Failed" Offensively, and negligently in so many ways and areas of the trial proceeding and representation of the Petitioner; (Please read Habeas corpus claims and merits - 1-5 of ineffective assistance of trial counsel), but especially "Failed" in "Compeling" the Prosecutor to produce (exculpatory evidence), that was "Favorable Material to the defense," and even after the trial Court Ordered,"

prosecutor to do so by November 22, 2011, at 1:00pm.

Trial attorneys unprofessional actions and inactions not only "Prejudiced", "Deprived" the Petitioner but also "HARM" the outcome of Petitioners trial proceeding.

Prosecutor and counsel's Violated Petitioners "Guaranteed U.S. Constitutional right to a fair trial, and effective assistance of counsel.

Petitioner has proven his "Brady" claim that the State withheld favorable and exculpatory evidence material to the defense. [A] Brady violation occurs when state suppresses willfully or inadvertently, evidence favorable to the defense. (See Harm V. State, 183 SW 3d 403 (Tex. Crim. App. 2006).

Petitioner has proven by the "Preponderance of the evidence, that trial counsel's performance was "Deficient," and that the deficiency "Prejudiced the defendant. (Strickland V. Washington, 466. U.S. 667, 668, 696 (1984) and "ADOPTED" by the Court of Criminal Appeals in Hernandez V. State, 726 S.W. 2d 53, 57, (Tex. Crim. App. 1986). "There must be a showing that trial counsel's "Performance" was so Deficient" because he made errors of such nature that he was not functioning as counsel, "GUARANTEED" by the 6TH Amendment U.S.- Constitution. Strickland at 687.

There must be a showing that trial counsel's performance

43/94

fails to "CONSTITUTE" Reasonable Effective Assistance," i.e. "that trial counsel's representation Fell Below An Objective Standard of Reasonableness Under Prevailing Professional Norms," Ex parte Menchaca, 854 S.W. 2d 128, 131 (Tex. Crim. App. 1993)

Nonetheless, the State argues that the "ORDERED" recordings by trial Court were made available before trial on November 23, 2011, the State "Fails" to show how they, "through due diligence" COMPLIED with their "Affirmative Duty" to comply with a "COURTS ORDER", or produce and surrender (EXCULPATORY EVIDENCE) to the defense the "Favorable Material," evidence that was in their possesion in a timely manner.

Further, the States misguided assertion, that counsel for the defense neglected to inquire if the recordings were ready before trial, because he did not believe they would benefit the defense "Is Not Suppored By The Record," and the State "Fails To Point" to the "Specific Portion" of the record to "Maintain this Claim."

When State "fails" to divulge to defendant "Potentially" Exculpatory evidence (whether directly exculpatory, or exculpatory as having "Impeachment" value) "Remand of cause, reversal of conviction, to trial Court for further proceedings is Remedy." Ex parte Mitchel 997 S.W. 2d 575 (Crim. App. 1997).

44/94

The State relies on an "Open-File" policy to support their claim, that a "MERE" phone call leaving a message recording, (if at all,) is sufficient to satisfy the "Brady Requirements" laid down by the SUPREME COURT. Prosecutor has an "Obligation and a Duty," to "Surrender" to the defense favorable material and exculpatory evidence when it goes to the guilt or innocence of the accused.

It is "Undisputed" that the prosecutor "Failed" to disclose the recordings, "exculpatory" evidence where trial counsel could have reviewed them on a timely manner and "Pointed Out", to the Court the "SPECIFIC PORTIONS," of the record, that would have benefited the defense.

Clearly, trial counsel was unfamiliar with the contents of the "Exculpatory" evidence that was "Suppressed" by the prosecutor, he had not been provided the record until after the trial. However, once the record was provided Appellate counsel for the defense did refer to voluminous record, specifying exactly what in the record would have been of benefit to the defense and, how the matter in question could have been used at trial. (See Appellant's Brief on Appeal pp. 9, 10, 11, 14, 15, 17) - (No. 13-12-076-CR)

The State knew very well that the "Exculpatory" evidence phone recordings would be "Favorable Material" to the defense in that it would have considerably impeached the alleged victim's testimony and, would have provided to defense significantly

45/94

alot more impeachment of the alleged victim than what took place resulting in a "reasonable probability" the outcome of the trial would have been different. It would have weaken the states frivolous case against the Petitioner. And without question "exculpatory" recordings would have given the jury a chance to hear the admitting statements that the alleged victim made over the phone conversations with Petitioner. These telephone conversations between Petitioner and alleged victim occurred between August 3, 2011 and October 4, 2011. R.V6 These recordings are "rich" with impeachment material that would have help the Petitioner be "Aquitted" by the jury if they would have been given the opportunity to hear them.

The recordings between August 3, 2011, and October 4, 2011, would not have been cumulative as state alleges too. The insignificant, or rather very little explicited impeachment testimony that alleged victim admitted to was in other word "only scratching the surface" compared to the tantamount of the impeachment material that was in the "exculpatory" phone recordings that prosecutor "Suppressed", violating Federal Law, and Petitioners Guaranteed right to a fair trial.

The jury would have heard in these recordings (exculpatory) the alleged victim state that she prayed before writing the affidavit and that she is proud of the

46/94

words she used in the statement. See Appellants Brief on Appeal page 15, (Appeal No. 13-12-076-CR).

She completely reads the entire "Affidavit" statement over the jail recordings to Petitioner. She starts off by stating (if Petitioner recalls well,) that her name is Christina Martinez, and that she is writing this Affidavit out of her own "free will," she goes on to say that she lied and was not or had not told the truth when she called the police, or the police were called. She states that she was being vindictive and vengeful when she fabricated police report on Petitioner. She states that the Petitioner is the victim in all this, that she used the fact that Petitioner was on parole to her benefit and that she used it when she sought fit too.

She admits that Petitioner never has hit her, and that she has lied to get her way because she was angry at Petitioner. (Note:) that she states all these under Oath in front of a notary public. Further, she admits to being a drug addict and an alcoholic, and that she would start up arguments in order for Petitioner to leave their place of residence so that she may get high. That the alleged fabricated police reports for assault in question were at 2612 Goliad street, and 2613 Guadalupe street. She also states

47/94

on the recorded statements "exculpatory" that she is tired of lying and apologizes to the Corpus Christi, police department. These are just a few admitted statements made by the alleged victim out of her own free will in these "exculpatory" recordings in which the jury never heard because the prosecutor suppressed the "EXCULPATORY" evidence.

Petitioner never told her what to write as she testifies too, on the witness stand being under oath to tell and expose the truth... (R, V3, p.59,60.) p.15- Appellants Brief (on appeal NO. 13-12-076-CR

These recordings (exculpatory) and affidavits would have proven and showed to the jury that her testimony was "CONTRADICTORY" to her trial testimony, and would have revealed that she was "commiting perjury" at trial.

Alleged victim commited PERJURY in testifying at trial while under Oath to tell the Truth, and got away with it, because the Favorable Material exculpatory evidence was suppressed and was not disclosed by prosecutor. Petitioner asserts as to be true that alleged victim lied about the alleged assault on police reports.

United v. Iverson, 637 F.2d 799 (D.C. Cir. 1980) (conviction must be

48/94

set aside, if false testimony that was not corrected by prosecutor could have affected the judgment of the jury); (See R, V3, pp. 59, 60; Appellants Brief on Appeal - p. 15) (Appeal No. 13-12-076-CR).

In this instant cause the credibility of the alleged victim (states-witness) was a critical issue. Therefore, the recordings that would have impeached her trial testimony, that were "Suppressed" willfully, neglectfully, or inadvertently can be said to have undermined confidence in the outcome of the trial. A "reasonable probability is one that is sufficient to undermine confidence in the outcome of trial.

In the instant States case in chief, and the strength of their case in the context of the entire record was weak. The state called three (3) witnesses. The alleged victim whose testimony was inconsistent and "Perjured," the police officer Ernesto Coronado, and Christina Torres (neighbor). Police officer Coronado and Mrs. Torres testified regarding their observations, neither of them directly witnessed any violence between Appellant and alleged victim, and neither witnessed any physical injuries. (R, V3 pp. 25-45) (Note:) also R, V6 File 2, File 5.

The jail recordings (exculpatory) would have supported the petitioner's defense that the alleged victim was lying and had "ulterior motives". Thus, they would have been "Favorable Material" for the defense, for the purpose of the present "Brady" claim, before this Court. Petitioner has proven his Brady claim, and that trial counsel rendered ineffective assistance of counsel.

49/94

(Note:) Retained or appointed counsel "Must" provide the accused the skills and knowledge necessary to ensure that the trial is "FAIR".

"STRICKLAND Standard"

In Strickland v. Washington, the "Supreme Court" established the standard for evaluating claims of ineffective assistance of counsel. The defendant must show the following: (1) that counsel's assistance was unreasonable considering all the circumstances of the case, and (2) that, "there is a "Reasonable Probability" that "absent the Errors", the factfinder (Jury) would have had a "Reasonable Doubt" respecting guilt." This "Standard" applies to claims brought on "direct appeal", "in motions for a new trial", or "in collateral attacks proceedings.

The defendant must establish that counsel's assistance was "UNREASONABLE", by "Identifying" counsel's "Specific Acts" or omissions that "Failed" to meet the prevailing "Professional Norms", of a defense counsel. After showing that trial counsel's conduct was "Unreasonable", the defendant must show "Prejudice" as to the verdict. The defendant "Must" show more, than, that, the alleged prejudicial error had "some conceivable effect on the outcome of the proceeding. The defendant must show that there is a "Reasonable Probability" that without counsel's error the result of the trial, that is, the "Verdict" would have been different. In Strickland, the Court held that "[a] Reasonable Probability" is a "Probability", Sufficient to undermine confidence in the outcome [of the trial]."

(NOTE:) The Prosecution, "argues this point inconsistently," (See Brief for the State, on Appeal Page (7).) Appeal No. 13-12-076-CR)

First, that counsel "Neglected" and that "Failure to Request A Continuance" in Spite of counsels Knowledge" of the "Existance", of these (exculpatory) jail recordings waived any "Brady" error.

Second, (P.P. 9-11 Brief for the State), (By State's own "Admission" and assertion to be true), claim that counsel was unfamiliar with the contents of the recordings and, that he only suspected that, they were "exculpatory" "[C]learly reflects counsels "Failure" to prove at trial and, hearing for "Motion for New Trial, his claim that the "Exculpatory" recordings contained "Favorable Material" evidence that could have been used by the defense; that trial counsels as part of his "Duty" to present "Evidence" to "Support Brady" claim on "Motion for New Trial," was "REQUIRED to PLAY" at least "RELEVANT - PORTIONS" of the recordings in question; that, "it was "NOT" Sufficient, simply to offer the disk (recordings); into evidence "without playing" it for the Court. (See - Page 10 of Appellant's Brief on Appeal - 13-12-076-CR)

In context of Appellee's (prosecution) "Argument" to the "Brady" claim, and to there "own admission" they are "asserting as to be true", that it was counsel who "Failed" to ask for a "Continuance"; "Familiarize himself with the contents of the recordings "and "Present" at trial and, at the "Motion for New Trial", "Specific Portions",

51/94

of the recordings. It is "Undisputed" through the face of the Courts record, that "either counsel was ineffective for "failing" to do those things", or the "State Failed to Comply" with a Courts Order to produce Exculpatory, and with their "Obligation and Duty" to Disclose all Favorable Material, and "Exculpatory" evidence to the defense on a timely manner and as "ORDERED" by the trial Court, and "Supported by Brady".

Herein, the Prosecution again attempts to divert or rather misguide the "FACTS" that either the State "Failed" to comply with their duty to disclose favorable material "exculpatory" evidence pursuant to Brady, or counsel "Failed" to familiarize himself with the contents of the recordings, by asserting that this was a strategic choice.

It is inconceivable for the State to attempt to make such an assertion. By the "Preponderance" of the evidence, the record "Clearly" indicates, that defense counsel after being informed by Petitioner, that, there had been numerous telephone calls (conversations) between him and, the alleged victim; at the pretrial conference, counsel for the defense "Specifically" requested the telephone records from the Nueces County jail. (R, V5, p. 21) The trial Court granted counsel's request and, "ORDERED" prosecutor, that the recordings "exculpatory" evidence be produced by November 22, 2011, at 1:00 pm. (R, V5, p. 22) The telephone recordings were

52/94

not produced by prosecutor on that date." (R, V5, p. 31).

According to testimony given at the defendant's hearing for motion for new trial, there was additional discussions between the defense attorney, the Court, and the prosecutor regarding the telephone recordings, (exculpatory). The recordings were supposed to be turned over the following day November 23, 2011, but again, prosecutor failed to "Comply" with trial Courts "Order" to do so...

Counsel for the defense testified at the hearing for motion for new trial, that he did not receive the telephone recordings (exculpatory evidence) until a day or two after sentencing (R, V5, P. 21) Therefore, counsel's intensions was to review the contents of the recordings and, use them in his defense.

The [F]act that defense counsel Failed (by prosecution's own "Admission") to hear the recordings contents, if he had been able to pick them up is a more "Credible Argument."
As stated in Appellant's Initial Brief on appeal, the State's assertion and, "misguided theory that they disclosed the jail recordings prior to trial and, trial counsel obtained them "is just not Credible".

In any event in the context of ineffective assistance of counsel claim for "Failure" to investigate and secure evidence, it is "Apparent" that the recordings were vital

53/94

and important issue in this case. Therefore, trial counsel "Failure" to have the trial Court order, or Compel the state to produce and disclose "PREVIOUSLY ORDERED", "exculpatory" telephone conversations, counsel's "Failure" to secure and investigate the recordings is, and Constitutes ineffective assistance of trial counsel. (Strickland Standard)

"By State's own Admission", that trial counsel "Failed" to seek a Continuance to obtain the recordings (exculpatory), and that he "Failed" to demonstrate "Specific Portions", of the recordings that would be beneficial to the defense, "CONSTITUTES" ineffective assistance of counsel, that counsel was "DEFICIENT", and even more than written evidence, "recordings are of "NO USE" to the fact finder (jury) "unless they are "PLAYED". (See Brief for the State, on appeal P.P. 1-4, 6-13, 17)

"Petitioner was "Prejudice" is "Manifested," in the recordings themselves", which contained favorable material to the defense, and exculpatory evidence, that was "NOT" presented to the jury to hear, who is the "Ultimate" fact finder. There exist a "Reasonable Probability" and "Possibility" that had the jury heard the "Specific Portions" of the recordings, and "Assessing" all the evidence that was available, but not presented in its "Totality", the jury "Would Have", acquitted the defendant. A "Reasonable Probability," is a probability that "Undermines the Confidence" in the outcome of

54/94

the proceedings. Hence, a "Reasonable Probability", that but, for trial counsel's "Unprofessional Errors" the results of the proceedings would have been different. And because of this instant claim, "FACTS" are that Petitioner could not have discovered at "Trial Court", because Prosecutor "Failed" to disclose "exculpatory" evidence in a timely manner that would have been "Favorable Material" evidence to the defense, and because of ineffective assistance of counsel, and because all the "FACTS" (evidence) in it's totality, along with other relevant documents, and other Facts already on the face of the record establish beyond "Clear and Convincing Evidence", and by the "Preponderance of the Exculpatory Evidence", that but, for the "Constitutional Violations" and "Errors" by the Prosecution and trial attorney, Petitioner is claiming and challenging, "No reasonable person or juror" would have found him guilty of the alleged charge he was convicted of. (Citing Brady V. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963) (Strickland V. Washington, 466 U.S. 668 (1984)

Wherefore, for the aforementioned reasons, the Petitioner respectfully requests that this Court of Criminal Appeals to overturn, reverse, set aside judgment of the trial court conviction and sentence in this cause, be remanded back to trial court for "Evidentiary" hearing, or with instructions entering a judgment of acquittal, or remand for a new trial with "effective assistance of counsel.

55/94

# ARGUMENT

The record of Petitioner's case failed to include prejudicial, (improper and biased) conduct, that occurred at his trial and, that would have led an appellate court to "REVERSE" the judgment against him if, the appellate Court "could have learned of the conduct in it's "Totality", from the record. Such conduct includes the Prosecutor's "Failure" to supply or disclose through their "Duty and their Obligation", defense with "Brady", material (Exculpatory) evidence in the prosecutor's possession, or "Knowledge" that is favorable material to the defense to guilt or punishment. A "Reasonable Probability" that the undisclosed "Exculpatory", evidence would have affected the "Ultimate" outcome of the trial.

Further, prosecutor was highly aware of alleged victim's (witness) "false and perjured" testimony. Therefore, defendant's conviction was "based entirely" upon inconsistent statements, false statements, and "PERJURED" testimony, by alleged victim while under Oath to tell the truth at trial.

"PERJURY": the basic elements of perjury are (1.) the making of a (2.) false statement, (3.) with Knowledge, that it is false, (4.) "while under Oath. (Note:) Christina Martinez, alleged victim committed "PERJURY" at defendant's

56/94

trial, and "GOT AWAY WITH IT!!!) In addition, the statement must be while under Oath. Most laws cover all statements made before, one who is authorized to administer oaths. Therefore, "Perjury Laws" apply to people who sign "Affidavits", before "Notary Publics", and appear as witnesses before a Court reporter (e.g.,) for disposition, a grand jury, and all others who have the authority to administer oaths. (Further, prosecutor was highly aware of alleged victim's (witness) "false and per- jured" testimony.) Most jurisdictions "Require that false statements be "Material", and important to the subject matter. This prevents prosecutions for trivial matters. Most jurisdictions have "defined materiality," as any matter that may affect the outcome of a trial case.

"SUBORNATION OF PERJURY": A related "Crime is Subornation of Perjury." "This occurres when one convinces, or "Procures" another to commit perjury" (this one person being prosecutor Leo Gonzales in this cause). One who participates in committing "Subornation Perjury" is treated as a perjurer for the purpose of sentencing, (again "Prosecutor in this cause being the procurer"). In addition, to "being a crime" in every State, "the United States" has also made perjury, "Criminal by Statue, 18 U.S.C. § 1621 reads ° Who- ever (1.) having taken an Oath before a competent tribunal officer, or person, in any case in which a law of the United States, authorizes an Oath to be administered, that he

57/94

or she will testify, declare, depose, or certify... is true, willfully and contrary to such oath states, or subscribes any material matter which he does not believe to be true...

Of course, "truth is a complete defense to a charge of Perjury." What is truthful is not always easy to determine, and in most questionable cases, prosecutors choose not to pursue the matter.

Alleged victim, (Christina Martinez), testified that after the defendant's arrest, she wrote and signed a "Affidavit" (Statement) "Under Oath," Exculpating Defendant of any wrong doing, and of another incident, and that she wrote also a letter exculpating defendant. (R,V3, pp. 51,52) (See also Appellants Brief on appeal pp. 7-8)(No. 13-12-076-CR)

She further testifies that there was a separate incident in July where she called the police, but later retracted her initial report. "She prepared a Affidavit," in her handwriting where she admitted "Lying" to the police. (R,V3, p.59) She testified ("Under Oath") that Petitioner told her what to write on the Affidavit." (R,V3, p.60) She also testified that she had been to prison for "Aggravated Robbery," (R,V3-p.64)

Further, there was two (2) "Affidavits" that were signed by the alleged victim in front of a "notary public" and under oath these affidavits and jail recordings (exculpatory) evidence were

58/94

very important to the defense, but were willfully neglected, and incorrectly not admitted into evidence at trial, because of the Suppression of evidence by the prosecutor, and the ineffectiveness of trial counsel. This favorable material are "Rich" with impeachment material. (See Appellants Brief on Appeal pp. 10-11) (No. 13-12-076-CR)

The following trial testimony on the face of the record by the alleged victim would have been impeached, had the defense had access to the recordings the "Prosecutor" diliberatly suppressed. Also, the "Affidavits" that had "favorable impeachment material," to the defense, that but, for counsel's unprofessional errors and ineffective assistance in not introducing the evidence to the jury "harmed, deprived and prejudiced" petitioner in having a fair trial, according to his "Constitutional" rights. This "Exculpatory" evidence would have provided to the defense "Significantly much more impeachment material, revealing, proving, and showing to the jury that alleged victim had or was "lying" and committing "PERJURY" on the witness stand at trial while under Oath. Resulting in a "Reasonable Probability" that the outcome of the trial would have been very different. (See Appellant's Brief on Appeal pp. 14-15, No. 13-12-076-CR)

Allege victim testifies on the witness stand at trial, knowing she is under oath, and required to expose the truth. (Notes) Prosecutor was aware of the false testi-

59/94

mony that alleged victim is about to testify too. None-the-less, she testifies that Petitioner told her, that he had what she needed to write on the "Affidavit" (statement). She also stated (under oath) that Petitioner told her what she needed to write on the "Affidavit", that he wrote to her, and that petitioner's mom took her to the place to get it signed, (Affidavit) (R. V3, pp. 59,60) (See Appellants Brief on Appeal P. 15)

No where on the recordings (exculpatory) does defendant mentions what she has claim in her testimony at trial, nor does she provide the letter she claims she received from defendant, instructing her what to write on the "Affidavit" (statement).

On the "CONTRARY" to what she has testified in being true. Petitioner's appellate attorney after reviewing the "EXCULPATORY" evidence (recordings), after the "motion for new trial", which was denied. In appellates initial brief on appeal for Petitioner, he states that after reviewing the recordings (exculpatory) he reveals a significant amount of rich impeachment material on the face of the recordings.
In these jail recordings, alleged victim tells Petitioner that "she wrote it herself," (Affidavit) that she prayed before she wrote the statement herself, and "She is Proud" of the words she used in the Affidavit.
(See Appellant's Brief on Appeal pp. 14-15) (Appeal No. 13-12-076-CR)

60/94

In the recordings she tells Appellant that she went to a law office to have the (affidavit) notarized. During this conversations she never mentions that Petitioners mom took her to get the affidavit signed. (See Appellants Brief on appeal, P.P. 14-15) (NOTE:) In these recordings she reads the entire statement (affidavit) to Petitioner, "Confessing and Admitting" to Lying to the police about the whole alleged assault allegations. (Refer to (exculpatory) affidavits and jail recordings on file in this cause). 11-CR-2782-B

Again, with the exculpatory recordings and affidavits from and of the alleged victim, that can be said to be "Constitutionally Errored," (by prosecutor and trial counsel) in not disclosing to the jury, or entered into evidence for the defense, so that, the jury could hear, the alleged victim's entire testimony could have come into question.

This exculpatory evidence could have helped the defense in showing and proving to the jury, that she was "lying", and committing "Perjury" at the same time while testifying at trial under Oath." Her whole testimony would have been called into question, and what's more, the defendant would have been found not guilty and acquitted of all the alleged offenses he was wrongfully convicted of.

Because Petitioner's "Constitutional" rights were Violated pursuant to the 6TH and 14TH Amends U.S. Const. during the trial and appellate proceedings. He is entitled to habeas corpus relief. Because such "discovery of new evidence", (Exculpatory Evidence), that was "deliberately suppressed" and not disclosed to the defense by the prosecutor Leo-Gonzales, even after the trial Court had "Previously-Ordered" prosecution to do so by November 22, 2011 at 1:00pm, and did not ... Because this evidence (exculpatory) was very crucial to the defense, that "was not" included or entered as evidence in favor of defendant at trial.

Petitioner respectfully asks this Honorable Court to either vacate, (Cancel), overturn, reverse the judgment, or set aside his sentence and conviction. Petitioner challenges the fairness and/or the "legality" of his conviction based on the circumstances describe in this "Response Brief", and "stating that the trial Court acted improperly", (jury), pursuant to the 6TH and 14TH Amends U.S. Const, of the Petitioners rights, when it found defendant guilty.

Prosecutor knew that the recordings (exculpatory evidence) and affidavits "exonerating defendant were favorable material to the defense, which would have acquitted the Petitioner of all alleged offenses given that the evidence in it's total-ity been introduced to the jury to hear.

62/94

Nonetheless, prosecutor allowed alleged victim to commit perjury at trial, and misrepresentation (false statements) while under oath to tell the truth. He knew that the testimony from the discredible alleged victim was false, (and he used "Duress on the alleged victim as well, threats, or undue psychological pressure) to secure defendant's conviction.

This claim is "Supported and manifested" in the recordings (exculpatory evidence) and both Affidavits of exonerating the defendant, between August 3, 2011, and October 4, 2011. There are "SPECIFIC FACTS" and statements (exculpatory) evidence, "Willfully ADMITTED" by alleged victim in the form of (2) Affidavits signed under oath, and jail recordings (exculpatory), and also a witness, (defendants parole officer George Abella), that the jury "never" had a opportunity to hear, or discover at the trial proceedings.

Again, Prosecutor allowed "Perjured" false testimony to be introduced as evidence by the alleged victim at trial. Alleged victim (Christina Martinez) and prosecutor (Leo Gonzales) both committed a Crime in the participation, at trial proceedings. Alleged victim committed "Perjury" and prosecutor "Procured" it.

It is all on the "Face of the Courts Record." (See Appellant's Brief on appeal P.P. 14-15, No. 13-12-076-CR) (See also — Affidavit on File Cause No. 11-CR-2782-B)

63/94

In the poor skilled attempt by ineffective trial counsel, in the intended impeachment process of the alleged victim which didn't fully take place at trial. The "Credibility" of the discredibile state witness was a "Critical Issue" to prove at trial. Even though alleged victim testified that she had been to prison for "Aggravated Robbery".(R3-p.64). Trial counsel "failed" to aggressively, and diligently explicit the allege victim's total "extensive criminal history at trial, pursuant to Rules 404(b) and 609(f) of the Texas Rules of Criminal Evidence and Rule 37.07 of the Texas Code of Criminal Procedure.

If the "Facts" and total evidence, would have been heard by the jury, of state witness (alleged victim) going to prison "twice" for 1st degree felony convictions, and other crimes, wrongs, or acts in her lengthy criminal history, and of her juvenile delinquency, and adult life; There exist a "Reasonable Probability" that the outcome of the trial would have been different. (See Criminal Case File on Christina Martinez S.I.D.# 10085392, D.O.B-05/06/1975, S.S.# 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, D.L.# 14749392-Tx)

Exculpatory recordings will indicate, reveal, and conclude that alleged victim was "Regretful of her "false allegations" towards defendant. "She Willfully Admits on Recordings," that she is Sorry for her angry and vengeful ways towards Petitioner, and in falsifying allegations of assault on police reports.

64/94

She states that she is willing to testify on defendant's behalf and "Admit" to her lying, so that defendant may be "Exonerated" of all alleged fabricated offenses. In addition she deposits cash in Petitioner's jail account. She financed Petitioner's numerous phone calls. She contacted Petitioner's parole officer in order to hand deliver the "Affidavit" (Copy) of non-prosecution, and admittance to her lying about the alleged assaults, she contacted the Court, District Attorney's office, and jail administration on behalf of defendant. Alleged victim's efforts were to secure the release of defendant's. (See Appellate Brief p. 11)

Prosecutor's stragedy was to "deliberately" suppress "exculpatory recordings" and to instill fear, intimidation, and manipulate the alleged victim into not testifying on defendants behalf, but rather against defendant at trial, in which he succeeded in doing. Prosecutor threaten the alleged victim with increased enhanced charges if she did not testify against Petitioner at trial, and go along with the fabricated police reports of assault. Recording will show and prove that the (alleged victim) was willing to "Exonerate" defendant at trial by testifying that she lied to the police. Recordings will also show the Petitioner warn alleged victim that prosecutor would threaten her to bring criminal charges if she did

65/94

not testify against defendant.

Alleged victim was "certainly under duress" by prosecutor to testify against her will, towards defendant. Prosecutor "KNEW" testimony was false, but allowed alleged victim to "Commit Perjury" at trial anyway. Exculpatory evidence (recordings) will show and prove the above stated by Petitioner. Further, alleged victim was certainly afraid and intimidated by prosecutor's threats of bringing criminal charges against her, for falsifying police reports, and being, that "she had been to prison twice," for 2 separate, 1st degree felonys already. Enhanced charges would have been in order for her if she did not cooperate with testimony which was false, against defendant.

For the aforementioned reasons, Petitioner is entitled to habeas corpus relief pursuant to the 6TH and 14TH Amends. - U.S. Const., and because of the "Preponderance of the Information," is evidence of "greater weight" or more convincing than the evidence, which is offered in opposition to it, that is, evidence which as a whole, shows that the facts sought to be proven is more probable than not. "Preponderance is not determined by the number, but by the greater weight of all "Credible" evidence".

The evidence in habeas corpus is very strong, that if granted a "Retrial" it would certainly produce an

66/94

acquittal. In addition Petitioner has proven and shown that the prosecutor "Failed" to turn over "exculpatory evidence" to the defense (evidence tending to support Petitioner's innocence).

To establish a claim that the "Prosecutor Failed", to turn such evidence, you must be able to show that:—

(1) The State possessed evidence favorable to the defense;
(2.) You did not possess nor could have obtained such evidence with reasonable effort;
(3.) The prosecution Suppressed (did not turn over) the evidence;
(4.) There is a "Reasonable Probability" the case would have come out differently, if the evidence had been disclosed. Citing Brady V. Maryland 373 U.S. 83 (1963), United States V. Bagley, 473 U.S. 667, 676-677 (1985)

"Because", the "United States Constitution is the only Federal law that Governs all state criminal procedures," habeas corpus claims by state prisoners "Must claim a violation of the "CONSTITUTION". "The U.S. SUPREME COURT interprets the CONSTITUTION, so the cases it decides describe "SPECIFICALLY" what makes up a "Constitutional" right or violation.

Petitioner asserts to be true, that his present imprisonment is a violation of the U.S. Constitution or the Laws of the

68/94

United States, and because his "Federal Rights" have been Violated during the trial and appellate proceedings. Prosecutor, and both trial and appellate counsel acted (or failed to act) during trial and appellate proceedings in several ways that "Violated" Petitioner's "Constitutional" rights.

A peron's and a prisoner's, "Constitutional Rights" can be found in the "Amendments to the Constitution", and what "Rights these Amendments Guarantee". They also list claims (habeas corpus) in "Violation of these Amendments. Petitioner asserts to be true, that the actions/inactions or Violations pursuant to the 6TH and 14TH Amends. U.S. Const; during the trial and appellate proceedings are described as follows: Under the 6TH-Amendment U.S. Const; Petitioner was "Prejudiced and Deprived" his Guaranteed right to an impartial jury, The Right to confront witnesses against him, and to be able to obtain witnesses for your defense, His right to testify on his behalf, and present evidence, and his right to present a defense; his right to have the assistance of effective counsel.

Under the "Fourteenth" Amends. U.S. Const; Petitioner was "Prejudiced and Deprived his rights to "due process" (see also the explaination for the Fifth Amendment as well.) However, this Amendmant applies "specifically to all states. This Amendment is what makes the above "Rights apply to both Federal trials, and State trials.

68/94

## Federal Constitution

Constitutions create the structure of government and define individual rights and liberties. "They are the most important authorities," and the "Constitution of the United States is the Supreme Law" of the United States. Any Federal case or statute, or any state constitution, case, or statue that "Violates" the U.S. Constitution is "UNCONSTITUTIONAL", which means it is "Completely" invalid.

The first ten Amendments to the Constitution (Known as the "Bill of Rights") along with the Fourteenth Amendment are the most important parts of the "Constitution" for criminal defendants and prisoners. They contain "GUARANTEES" of personal "rights and liberties. Of particular interest to the Petitioner are the First Amendment (freedom of speech), the Sixth Amendment (jury trials for crimes and procedural rights), and the Fourteenth Amendment which is also very important because it "prohibits" state governments from "Depriving you of life, liberty, or property without due process of law (i.e., certain legal procedures), and it "GUARANTEES" the "Equal Protection", of law. Similar rights are GUARANTEED to you from the Federal government through the Fifth Amendment.

## The Harmless Error Rule

Petitioner has "Established" through the face of the Court's

69/94

record, habeas corpus petition's, and other relevant documents that a "Violation of the Constitution" occured and that he was "HARMED by the VIOLATION". This is necessary because of the "harmless error rule," which says that even if your "rights were violated," a Court cannot grant you habeas corpus relief unless you show that you were actually "Harm by the Violation", (that is, the Violation Substantially affected the outcome of trial.)

The Standard for determining what counts as a "harmless error" in Federal habeas petitions was established in "Brecht V. Abrahamson. In Brecht, the "SUPREME COURT," held that errors are not harmless, unless they have a "Substantial and Injurious Effect," or "Influence in Determining the Jury's Verdict". The circuit Courts are divided on how Brecht applies after the AEDPA amendment to 20 U.S.C. § 2245 (d)(1).

The alternative standard for "harmless error" analysis was developed in Chapman V. California. In Chapman, the "SUPREME COURT held that a Violation of a "Constitutional" right is not harmless unless the Court believes the error is harmless "beyond a reasonable doubt".

Some courts have interpreted AEDPA to require courts to first evaluate the violation under the "Chapman" reasonable doubt standard, and then, also evaluate the violation under the Brecht standard, some circuits hold "Brecht" to be the relevant

70/94

standard, and other circuits hold that AEDPA supersedes the "Brecht" standard.

Petitioner has shown "what effect" the error had, or reasonably may ... have had upon the jury's decision". Further, Petitioner's argument through his habeas corpus petitions and other relevant documents (exculpatory) has "Demonstrated" that the errors played a serious role in (or had a "substantial and injurious effect" on) the jury's decision-making process.

Judges will likely consider the context when making a harmless error determination. Among the factors that might be considered are: (1) The nature of the "right at issue"; (2) How severely "violations of that right" are likely to affect the jury's deliberations; (3) The character of the proceeding; (4) What is at stake; (5) The seriousness of the violation; and (6) The frequency of the violation during trial.

## APPLICABLE FEDERAL LAW

"Brecht v. Abrahamson," 507 U.S 619, 623, 113 S. Ct. 1710, 1714, 123 L. Ed. 2d 353, 363 (1993) This test is sometimes referred to as the "Kotteakos" test. Before "Brecht" the Kotteakos test had been the test used in Federal habeas proceedings of federal prisoners to determine whether a non-constitutional error was harmless. In "Brecht", the court applied the Kotteakos test —

71/94

to all violations, "including Constitutional violations." (See Kotteakos V. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L. Ed. 1557 (1946)

Brecht v. Abram, 507 U.S. 619, 637, 113 S.Ct. 1710, 1722, 123 L. Ed. 2d 353, 373 (1993) (See Gutierrez V. Mc Ginnis, 389 F. 3d 300, 304 n. 3 (2d Cir. 2004) (See also Chapman V California, 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed 2d 705 (1967)

In "Brecht" the "SUPREME COURT" limited the application of the "Chapman" standard to cases on direct review and established the "Brecht" standard for habeas review. (See - Whitmore V. Kemna 213 F. 3d 431, 433 (8TH Cir. 2000) Gutierrez - V. McGinnis, 389 F. 3d 300, 306 (2d Cir. 2004) (holding that when a state court has explicitly conducted a review of a Constitutional violation for harmless error, 28 U.S.C. § 2254(d)(1) - "requires the habeas court to apply the "Chapman standard").

"Brecht also included an exception" stating that a deliberate and especially serious error, or one combined with a pattern of prosecutorial misconduct, might warrant habeas relief even if it "did not" "Substantially influence" the jury's verdict.

In addition, at least one standard applies to all judges: if the Federal judge reviewing your case is in "grave doubt," meaning he or she cannot decide whether or not an error had a

72/94

"substantial and injurious effect," he or she "must" "find that the error was not harmless. In other words, you get the benefit of the doubt, as long as the judge has a strong doubt about the effect of the error.

Therefore, if the judge cannot determine the effect of the error, your habeas petition has satisfied the requirement of showing that you were "harmed" and that the harm might have affected the outcome of the case. "Specifically, AEDPA provides that when a Federal court is determining how the state court applied the law" in your state collateral attack, "it must only hold the state court's decision to a standard of unreasonableness. Also, if the prosecution fails to raise the harmless error issue, "it is waived" and the Court will assume that the violation caused harm. (Citing O'Neal v. McAninch, 513 U.S. 432, 435, 115 S.Ct. 992, 994, 130 L.Ed. 2d 947, 951 (1995) However, "the Federal judge does not need to be convinced beyond a "Reasonable Doubt", that the error was harmless. (See Fry v. Piller, 551 U.S. 112, 121-22, 127 S.Ct. 2321, 2328, 168 L.Ed 2d 16, 24 (2007).

The state court's decision must have "resulted in a decision that was contrary to" or involved an "Unreasonable" application of, "CLEARY" established "Federal Law." 28 U.S.C. § 2254 (d) (1) (2006); See Gutierrez V. McGinnis, 389 F. 3d 300, 304 (2d Cir. 2004) ("[F]ederal courts sitting in habeas review of state conditions "must" grant a measure of deference to-

73/94

claims "adjudicated on the merits" by state courts") See United States v. Dominguez Benitez, 542 U.S. 74, 82 n. 7, 124 S. Ct. 2333, 2339 n. 7, 159 L. Ed. 2d 157, 167 n. 7 (2004) (holding that using the Brecht standard means that the government has "the burden of showing that Constitutional trial error is harmless").

Sanders v. Cotton, 398 F. 3d 572, 582 (7th Cir. 2005) (holding that the harmless error rule was waived because the state did not raise it in district court).

AEDPA Standard of Relief: Showing the Federal Court that the State Court was incorrect in Refusing to Grant You Relief.

In 1996 AEDPA altered 28 U.S.C. § 2254 and set a new "standard of Review" for habeas relief for state court prisoners. A standard of review is the test that the Federal Court will use to decide whether to overrule the state court's decision denying a state court prisoner relief. Under AEDPA, a prisoner must prove that the state court decision rejecting your claim was either "CONTRARY to", or "Involved an Unreasonable Application of, "CLEARLY ESTABLISHED FEDERAL LAW", as determined by the "SUPREME COURT of the UNITED STATES," or, that it was based on an "Unreasonable Determination of the Facts in light of the evidence presented or not -

74/94

presented in the State Court proceedings. The Federal Court will look to see if the state court's decision was "Unreasonable" or "CONTRARY" to the "SUPREME COURTS" interpretation of "FEDERAL LAW".

In addition to demonstrating that the state court's decision-making process was incorrect, a prisoner will need to show that the state court's ultimate determination was incorrect using "FACTS". Showing that the state court was incorrect will be subject to the AEDPA standard of review, so the prisoner will have to prove that the state court was "Unreasonable" or "Contrary" to the "SUPREME COURTS" "Interpretation of FEDERAL LAW". This means that you will have to show the Federal Court that the State court was incorrect in failing to find that the "Violation" occured, in addition to showing that the Constitutional violation occurred. (by showing that the action met the appropriate standard).

## CONTRARY TO, OR INVOLVING AN UNREASONABLE APPLICATION OF "CLEARLY ESTABLISHED FEDERAL LAW," AS "DETERMINED BY THE SUPREME COURT"

The "SUPREME COURT", explained this test in Williams v. Taylor. In Williams, the petitioner claimed his attorney had provided ineffec-

75/94

tive assistance of counsel. The Court held that Mr. Williams had shown his counsel's performance was ineffective and went on to consider whether habeas relief should be granted under this standard. The "SUPREME COURT" first held that in order to be successful, a Petitioner must show that the claimed violation "was based on FEDERAL LAW," that was "CLEARLY Established by the SUPREME COURT" at "the time the state court decided these claims." This means that before the court will consider your claim, you must show that the law you are relying on is not new and, that the "SUPREME COURT" itself has interpreted the law at some point in the past.

Petitioner has shown that he is "RELYING" on "Clearly Established FEDERAL Law". Petioner asserts to be true that the trial and appellate state courts decision in his case, "was CONTRARY to that FEDERAL Law," or that the "state or trial court applied the law in an "UNREASONABLE" manner,

## CONTRARY STANDARD

Petitioner has shown through his habeas petitions and the face of the courts record, that his conviction or the courts decision was "CONTRARY" to clearly established FEDERAL Law". In Williams, the "SUPREME COURT" held that

76/94

this clause meant that "habeas relief is warranted," if the state court "applies a rule that Contradicts the governing law" set forth in our cases. Therefore, trial court and appellate courts have "Applied" the wrong standard in Petitioner's case or has "interpreted that Federal standard incorrectly according to" Clearly "established Federal law.

For example, in an ineffective assistance of counsel case, the governing standard by the "SUPREME COURT" is the STRICKLAND standard. If the state court applied a standard that was different, than the Strickland standard, than it has applied a standard "CONTRARY", to "Clear Established FEDERAL Law", and relief may be warranted. Also, if the state court interpreted STRICKLAND incorrectly, then the decision would be "Contrary to FEDERAL Law," and "relief would be granted by Federal habeas court.

## "APPLICABLE CLEARLY ESTABLISH FEDERAL LAW"

Strickland V. Washington 466 U.S. 668, 688, 694, 104 S. Ct. 2052 2064, 2068, 80 L. Ed 2d 674, 693, 698 (1984) ("Declaring that the standard for establishing ineffective assistance of counsel is whether the attorney's performance was objectively reasonable and whether deficient performance prejudiced the defense").

77/94

Further, Petitioner has shown through the face of the record that the state court's determination or decision "was Contrary to FEDERAL law, and that the "SUPREME COURT" has considered a case "very similar" to his, and it reached a different conclusion than the state court. (NOTE:) This means that when Petitioner has find a "SUPREME COURT" case with very similar facts as his case, " and the state court did not rule in the same way as the "SUPREME COURT," "Petitioner would be entitled to relief."

In Williams, however, the "SUPREME COURT" stressed that if the correct legal standard is applied to a claim and there is no "SUPREME COURT" case with similar facts, then the state court decision rejecting the claim is not " CONTRARY" to FEDERAL Law.

So under this part of the test, in order to show that the decision rejecting your claim was "Contrary to FEDERAL Law, Petitioner "MUST" do one of three(3) things : (1) show that the court relied on the wrong standard in determining whether a violation had occurred; (2) show that the court chose the right standard, but then applied it incorrectly to your case; or (3) point to the "SUPREME COURT'S" case with similar facts and, claims to your case in which the "SUPREME COURT" ruled differently than the state court in your case.

78/94

Put simply, Petitioner has proven that he deserves relief, because he has pointed to several Constitutional Violations of Federal Law, He has identified the standard that applies to those violations, He has further shown the court that the violation in his case meets the standard, and because he has ligitameately argued that the state court used the wrong standard or applied the standard incorrectly to the "FACTS" in his case.

In Williams, the "SUPREME COURT" found that the state court's decision "was Contrary to FEDERAL Law," because the court used the test for ineffective assistance of counsel found in Lockhart v. Fretwell, 506 U.S. 364, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993), "instead of the "STRICKLAND" standard, which should have been used. Williams V. Taylor, 529 U.S. 362, 391, 120 S. Ct. 1495, 1512, 146 L. Ed 2d 389, 416-17, (2000) (O'Connor J., concurring).

See e.g., Bell v. Cone, 535 U.S. 685, 693, 122 S. Ct. 1843, 1849, 152 L. Ed. 2d 914, 926 (2002) ("observing that AEDPA," "modified a Federal habeas court's role in review-ing state prisoner's application in order to prevent Federal habeas retrials and to ensure that state-court convictions are given effect to the extent possible under the law.")

William V. Taylor, 529 U.S. 362, 406, 120 S. Ct. 1495, 1519-79/94

- 20, 146 L. Ed. 2d 389, 426 (2000) ("A state-court decision will also be "CONTRARY" to this "SUPREME COURT'S" "Clearly Established "PRECEDENT" if the state-court confronts a set of facts that are "Materially indistinguisable from a decision of this "SUPREME COURT" and never the less, arrives at a result different from our "PRECEDENT".)

See also Ramdass V. Angelone, 530 U.S. 156, 165-66, 120 S. Ct. 2113, 2119-20, L. Ed. 2d 125, 135-36 (2000) (reiterating that "A state court acts contrary to Clearly Established FEDERAL Law", if it applies a legal rule that "Contradicts" our prior holdings; or if it reaches a different result from one of our cases despite confronting indistinguisable facts").

See Lockyer V. Andrade, 538 U.S. 63, 73, 123 S. Ct. 1166, 1173, 155 L. Ed 2d 144, 156 (2003) (explaining that if the state court confronts a set of facts that are materially indistinguisable from a decision of the "SUPREME COURT" and never the less, arrives at a different result than the "Supreme Court" the state court's decision is "CONTRARY" to FEDERAL Law".)

William V. Taylor, 529 U.S. 362, 385-86, 120 S. Ct. 1495, 1508-09, 146 L. Ed. 2d 389, 412-13 (2000); Ellis V. Norris, 80/94

232 F. 3d 619, 623 (8TH Cir. 2000) (Concluding that the "state court's decision was not contrary to "Clearly Established Federal law" because the facts involved "materially distinguished" it from any relevant "SUPREME COURT PRECEDENT");

Jones V. Stinson, 229 F. 3d 112, 119 (2d Cir. 2000) (holding that a state court decision was not contrary to SUPREME COURT Precedent," because it did not apply a rule of law "Contradicting precedents" and did not contain "Materially indistinguishable" facts from a "SUPREME COURT" case that reached a contrary result).

Sanders V. Easley, 230 F. 3d 679, 686 (4TH Cir. 2000) (holding that a state court decision was not "Contrary" to established "SUPREME COURT" Precedent, when the state court "correctly identified the governing standard" and "articulated specific considerations similar to those recognized by the SUPREME COURT").

But see Lockyer V. Andrade, 538 U.S. 63, 73, 123 S. Ct. 1166, 1173, 155 L. Ed. 2d 144, 156 (2003) (explaining that if the state court confronts a set of facts that are materially indistinguishable from a decision of the "SUPREME COURT" and nevertheless arrives at a different result than the SUPREME COURT, the state court's decision is "CONTRARY" to FEDERAL Law".)

81/94

# UNREASONABLE APPLICATION STANDARD

Petitioner contends that state court applied or used the wrong standard for the violation he is claiming, and further applied it to the "Facts" of his case in an "Unreasonable" way. The standard use in Petitioner's case was "Contrary to" Clear Established Federal Law. The state courts decision was an "Unreasonable" application of Federal law". Petitioner has shown that the state court was "objectively unreasonable" in the way it applied the standard. (Please refer to Habeas Petitions)

" In addition, Petitioner has shown that there is "Specific-SUPREME COURT PRECEDENT" that "REQUIRED" the state court to reach a result that it did not reach. Petitioner asserts to be true, that the more recent and specific the "SUPREMES COURT PRECEDENT" is, and the more similar it is to his case, the more closely the state court will have to follow the "PRECEDENT". The "SUPREME COURT" PRECEDENT in Petitioner's case was "Specific" and "Required" a specific outcome in his case.

The "SUPREME COURT" has said that an "Unreasonable" application of FEDERAL Law is more than just an incorrect application of FEDERAL Law".

82/94

Through Petitioner's Habeas for relief, he has shown that the courts point of view is different and contrary to "Clear" established Federal Law, and how most people would see the situation (violations), and that it would be hard for a "REASONABLE" person to understand how the state court came to it's unreasonable decision.

Further, Petitioner has shown "Significant Error" through the face of the courts record, and in the courts reasoning. (Citing Williams V. Taylor).

## APPLICABLE FEDERAL LAW

Williams V. Taylor 529 U.S. 362, 409, 120 S. Ct. 1495, 1521, 146 L.Ed 2d 389, 427 (2000) (explaining that the "Unreasonable application" standard is met when "a state court decision unreasonably applies the law of the "SUPREME COURT" to the Facts of a prisoner's case").

See Wiggins V. Smith, 539 U.S. 510, 520, 123 S. Ct. 2527, 2534-35, 156 L. Ed 2d 471, 484 (2003) (Stating that unreasonable application of Federal law is when "a state court has misapplied a governing legal principle", to a set of facts different from those of the case in which the principle was announced:" (quoting Lockyer V. Andrade, 538 U.S. 63, 76, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144, 158 (2003),

83/94

Ramdass v. Angelone, 530 U.S. 156, 166, 120 S. Ct. 2113, 2120, 147 L. Ed 2d 125, 136 (2000) ("The statue also authorizes Federal habeas corpus relief, if under "Clearly Established Federal law", a state court has been "Unreasonable" in applying the "governing legal principle to the facts of the case".

A state determination may be set aside under this standard if, "Under clearly established Federal law, the state court was Unreasonable in refusing to extend the governing legal principle to a context in which the principle should have Controlled".)

Francis S. -v- Stone 221 F. 3d 100, 111 (2d Cir. 2000) (stating that "some increment of incorrectness beyond error is required" but "the increment need not be great").

(NOTE:) The "CONSTITUTION" of the United States" is the SUPREME LAW of the land, and must always be followed." The "SUPREME COURT" is not bound by the decisions of any other court. The SUPREME COURT generally follows it's own prior decisions. Adherence to past decisions "Constitutes the rule of stare decisis.

(NOTE:) As a general rule the state and federal courts are completely separate, except for the ultimate review by the United States SUPREME COURT of state court decisions involving Federal questions. State courts are bound by United States Supreme Court decisions which declare what-

84/94

the *Federal Constitution provides.* Only SUPREME COURT holdings are considered law "Clearly" established by the SUPREME COURT. (*Williams V. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523, 146 L. Ed. 2d 389, 425, 429 (2000) (O'Connor, J., concurring).

*Strickland V. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 2064, 2068, 80 L. Ed. 2d 674, 693, 698 (1984) (declaring that the standard for establishing ineffective assistance of counsel is whether the attorney's performance was objectively reasonable and whether the attorney's performance was objectively reasonable and whether deficient performance prejudiced the defense).

*See Wiggins V. Smith*, 539 U.S. 510, 528, 123 S. Ct. 2527, 2538 156 L. Ed. 2d 471, 489 (2003) (findings that a "Clear factual error" in a state courts analysis "high light [ed] the unreasonableness" of the courts decision)

*See also Rompilla V. Beard* 545 U.S. 374, 389, 125 S. Ct. 2456, 2467, 162 L. Ed. 2d 360, 376 (2005) (finding that the state court's "Failure" to answer the considerations [the SUPREME COURT] ha[s] set out" amounted to an unreasonable decision on a claim of ineffective assistance of counsel)

*Mask v. McGinnis*, 233 F. 3d 132, 140 (2d Cir. 2000)

(Concluding that the state court's decision was a "unreasonable application" of the test in Strickland, because it required petitioner to meet a higher standard-certainty that the results of the proceedings would have been different to establish an ineffective of counsel claim, rather than the preponderance of the evidence standard required under Strickland). Washington V. Hofbaver, 228 F. 3d 389, 707 (6TH Cir. 2000) (Concluding that the state courts application of Strickland was objectively unreasonable where, among other things the state incorrectly cited Darden V. Wainwright, 477 U.S. 168, 182, 106 S. Ct. 2464, 2472, 91 L. Ed. 2d 144, 158 (1986) to support its incorrect conclusion that counsel was not ineffective in failing to object to prosecutorial misconduct in the closing argument).

Davis V. Strack, 270 F. 3d. 111, 133 (2d Cir. 2001) (finding that the Appellate Divisions decision was "egregiously at odds with the standards of due process propounded by the SUPREME COURT" and fit within the unreasonable application clause.)

Jermyn V. Horn, 266 F. 3d 257, 312 (3d Cir. 2001) (finding that defendant's counsel had been ineffective for "failing to conduct adequate investigation and,

86/94

that "the state court's decision to the contrary was objectively unreasonable").

McFarland v. Yukins, 356 F.3d 688, 714 (6TH Cir. 2004) (finding that requiring the defendant to go to trial with an attorney with a conflict of interest was contrary to clearly established Federal Law.)

Boss v. Pierce, 263 F.3d 734, 742 (7TH Cir. 2001) (holding that the appellate courts decision was unreasonable and noting that to determine unreasonableness, the court asks "whether the decision is a least minimally consistent with the facts and circumstances of the case or if it is one of several equally plausible outcomes ... [and only granting habeas]" if the determination is at such tention with governing U.S. SUPREME COURT Precedents, or so inadequately supported by the record, or so arbitrary as to be unreasonable", (internal quotations omitted)

Byrd v. Lewis, 566 F.3d 855, 866 (9th Cir. 2009) (finding that an error in jury instructions is not "structural" when it affects only an element of the offense, a permissible evidentiary inference, or a potential theory of conviction," rather than "the

87/94

overarching reasonable doubt standard of proof") Thomas V. Gibson, 218 F.3d 1213, 1220 (10TH Cir. 2000) applying the SUPREME COURTS distinction between erroneous and unreasonable).

## "UNREASONABLE DETERMINATION OF FACTS IN LIGHT OF THE EVIDENCE PRESENTED IN THE STATE COURT PROCEEDING"

Petitioner is entitled to habeas relief because the trial and appellate courts determination of his case and claims rested on incorrect law, or law that was "unreasonably applied". Further, the state court got the facts of his case wrong. The state courts neither determined the right standard for Petitioner's case, and (1.) did not believe none of the evidence that was presented; (2.) interpreted some of that evidence incorrectly and based a ruling on this misinterpreted evidence; or (3.) "ignored legally relevant facts that it needed to consider in order to reach the correct result.

(NOTE:) If the Federal Court determines that the state court "unreasonably interpreted the facts of your case and based it's decision on unreasonably interpreted facts, than it can grant habeas relief.

88/94

Petitioner has shown and proven through the face of courts record and other relevant documents in his case, that the state court "did not read the facts correctly", because it either ignored most of the evidence, or interpreted most of the evidence incorrectly, (EXCULPATORY EVIDENCE).

Further, Petitioner has proven that the state courts decision would have been different, if both trial and appellate courts had properly considered and applied all of the relevant facts in its totality.

Because of the suppression of exculpatory evidence by the prosecutor that was favorable material to the defense, the state court was did not or was unable to determine the true facts; but should have. So, therefore Petitioner is entitled to habeas relief. Petitioner argues the fact that the states court "failure to find facts at all is actually an "unreasonable determination of facts". (Please read both habeas corpus petitions on ineffective assistance of counsel, and Prosecutions failure to disclose "Exculpatory).

Petitioner has proven that the state court determinations of fact were totally "unreasonable", because the fact finding procedure the the state-

89/94

court used was inadequate. The trial and appellate courts made conclusions without looking at the "EXCULPATORY EVIDENCE" Petitioner presented at trial on motion for new trial. Also the suppression of exculpatory evidence at trial was not examined by the jury. Court did not take into consideration all of the exculpatory evidence he presented. This inquiry deals with how the state courts went about making factual determinations, not what those determinations were. Petitioner has further proved that the state court determination of facts were totally "unreasonable." So therefore to show that the determinations the state court made were "Substantively Unreasonable" because it was not at all supported by the (EXCULPATORY) evidence record that was "SUPPRESSED" by prosecutor. The standard for doing this is "Clear and Convincing Evidence."

Petitioner has not just make conclusions, and assertions that state court determined the facts unreasonably, but actually has demonstrated to this Court with "Specific" examples, why the state's determination of facts was unreasonable. (See habeas petitions, and courts record).

90/94

Petitioner has further shown that his imprisonment violates the U.S. Constitution, the laws or the treaties of the United States.

Petitioner has "Rebutted" the presumption of correctness of (the state courts) findings by "clear and convincing evidence"). (See habeas petitions in its "Totality")

See Torres V. Prunty, 223 F. 3d 1103, 1110 n. 6 - (9TH Cir. 2000) (finding that "the state courts factual determinations were Unreasonable" and that the defendant "REBUTTED" the presumption of correctness of the "state courts" findings by clear and convincing evidence.")

28 U.S.C. § 2254 (e)(1)(2006) "[A] determination of a factual issue made by a State court Shall be presumed to be correct. The applicant Shall have the "Burden of Rebutting" the presumption of correctness by "clear and convincing evidence").

91/94

# CONCLUSIONS

Petitioner has shown and proven both improper conduct by prosecutor and, "PREJUDICE" to the defense, and this Court should dismiss this entire case in the interest of justice, or new trial should be granted because prosecution's withholding "exculpatory" evidence, favorable material "Prejudiced" petitioner's case at trial, and there exists a "Reasonable Probability" that the "Violation" (Brady claim), "Contributed to the Verdict."

Or it should be overturn, reverse for insufficiency of evidence. In Strickland, the "SUPREME COURT" held that ["a"] Reasonable Probability" is a probability "Sufficient" to undermine confidence in the outcome [of the trial]."

Petitioner asserts or has shown and proven that his Guaranteed U.S. Constitutional rights were "Violated by prosecution, and both trial and appellate attorneys, pursuant to the 6TH and 14TH Amendments U.S. Const; during the trial and appellate proceedings, and this "Response Brief" further proves Evidentiary support of facts, and conclusions of "Clear Established" PRECEDENT, FEDERAL Law in his case, and that he is entitled to habeas relief...

Wherefore, based on the aforementioned facts, and authorities, the Petitioner prays that this Honorable Court grant relief on his current petitions for Writ-of Habeas Corpus art. 11.07, and any, and all relief-

92/94

it deems just and appropriate at this time.

(Enclosure: U.S. District Court -
Civil Action No. 2:14-CV-240)
Respectfully Submitted,

C.C. File S. Lopez
117TH Judicial Court
*Sammy Lopez* Petitioner / Prose

Sammy Lopez T.D.C. #1755335
1300 FM 655, Terrell Unit
Rosharon, TX 77583

## Inmates Declaration

I, Sammy Lopez, am the Petitioner and, being presently incarcerated in Terrell Unit, declare under penalty of perjury that according to my belief, knowledge and the facts stated and authorities cited in this "Response Brief" in support for current petitions for Writ of Habeas Corpus, and in opposition to the findings of fact, conclusions of law, and recommendation from the 117TH Judicial Court, are true and correct.

Executed and signed on this _9TH_ day of February 2015.

(Enclosure: U.S. District Court -
Civil Action No. 2:14-CV-240)

*Sammy Lopez*

C.C. File S. Lopez
117TH Judicial Court
Signature of Petitioner

93/94

## Certificate of Service

I, do hereby certify that a true and correct copy of the above and foregoing, Petitioner's Respone Brief (prose) has been served by placing the same in the U.S. Mail (prison system), postage prepaid, on this the 9TH day of February, 2015 addressed to:

CLERK, Abel Acosta
Court of Criminal Appeals
P.O. Box 12308, Capital Station
Austin, TX 78711

Sammy Lopez  Petitioner
T.D.C.#1755335
1300 FM 655-C.T. Terrell Unit
Rosharon, TX 77583

Enclosure: United States District Court,
Southern District, Civil Action No. 2:14-CV-240

117 TH Judicial Court, Nueces County, TX

Sammy Lopez  C.C. File